[No. B122692. Second Dist., Div. Four. Oct. 5, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES E. JONES, Defendant and Appellant.

## Counsel

Carlton E. Lacy, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mary Sanchez and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Defendant and appellant Charles E. Jones appeals after being convicted of multiple offenses. Appellant contends, and the People concede, that the evidence was insufficient to support his conviction for kidnapping during the commission of carjacking. The People contend that the conviction should be reduced to one for attempted carjacking; however, appellant contends that instructional error precludes our doing so. We find no merit in appellant's contention and accordingly we reverse the conviction for kidnapping during the commission of carjacking and modify the conviction to attempted carjacking.

Appellant further contends there was insufficient evidence to support a conviction of kidnapping for robbery, as the asportation requirement for that crime was not met. Finding no merit to this contention, we affirm the judgment of conviction for kidnapping for the purpose of robbery.

Further, we find merit in appellant's contention that there was insufficient evidence to support the trial court's finding that appellant had been convicted of a prior serious felony strike, and therefore remand the matter to the trial court for retrial of the issue.

Finally, we agree with the Attorney General's contentions that (1) the abstract of judgment must be corrected to reflect a restitution fine imposed by the trial court (Pen. Code, § 1202.4, subd. (b));[1] and (2) an additional parole revocation fine was required to be imposed (§ 1202.45).

## PROCEDURAL BACKGROUND

Appellant was charged by the District Attorney of Los Angeles County in an amended information with (count I) kidnapping for robbery (§ 209, subd. (b)), a serious felony within the meaning of section 1192.7, subdivision (c); (count II) kidnapping during the commission of carjacking (§ 209.5), a felony; and (count III) second degree robbery (§ 211), a serious felony within the meaning of section 1192.7, subdivision (c). It was further alleged as to each count that appellant previously had been convicted of federal bank robbery in Washington, in violation of title 18 United States Code section 2113(a), within the meaning of the Three Strikes law. Appellant pleaded not guilty and denied the special allegations.

Appellant brought a motion to act in propria persona, which was granted. A jury found appellant guilty as to each count. The trial had been bifurcated, and the trial court found the prior conviction allegations to be true.

Appellant was sentenced as to count I to life with the possibility of parole, with the minimum parole eligibility date of 19 years (7 years doubled to 14 years pursuant to the Three Strikes law, plus a 5-year enhancement pursuant to section 667, subdivision (a)(1)). The same sentence was imposed as to count II but was stayed pursuant to section 654. On count III, the trial court sentenced appellant to one-third the middle term of three years, or one year, which sentence was doubled to two years pursuant to the Three Strikes law; however, the trial court stayed the sentence pursuant to section 654.

Appellant was awarded 218 days of presentence custody credit, consisting of 190 actual days and 28 days of conduct credit. The trial court imposed a $1,000 restitution fine pursuant to section 1202.4.

This appeal followed.

## FACTUAL BACKGROUND

At 11:50 a.m. on November 7, 1997, Miranda Watkins drove her Mustang to Charter Oak High School to meet her boyfriend for lunch. She parked facing a football field and walked across the parking lot to her boyfriend's

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

truck. As she was parking, she noticed a man, whom she later identified as appellant, wearing a long-sleeved shirt, long pants, and a hat. She waited at her boyfriend's truck for about 10 minutes, then walked back to her car, and set the alarm.

She walked back to the truck and turned around to see appellant standing right behind her. Appellant grabbed her, she screamed, and he put his gloved hand over her mouth and cursed at her, telling her to shut up. She was holding in one hand her keys and her wallet with her pager clipped onto it. Appellant knocked her to the ground, still cursing at her and holding his hand over her mouth. She struggled somewhat but could not scream because his hand was over her mouth. He told her to get up, but she said she could not because he was putting so much pressure on her mouth. He picked her up and took her wallet, keys, and pager from her. He walked her directly to her car without asking which one was hers. She estimated the distance between her boyfriend's truck and her car was about 40 feet. She said, "Please don't hurt me, just take everything." Appellant replied, " 'I plan on it.' "

When they reached the car, appellant put Watkins's wallet on top of the car and tried to unlock the door. He could not get the door open, and told her to do it. She told him the alarm was on, but he did not reply. She unlocked the door, he opened it, and the alarm sounded. He told her to turn it off, and she attempted to do so by pushing an alarm button on her key chain, but she could not turn it off because the button tended to malfunction. He had put his hand over her eyes and she told him she could not see. He moved his hands back over her mouth, then pushed her inside the car. Watkins knew that if she tried to start the car, the battery would die and the alarm would stop. She turned the key in the ignition and heard the battery click as if dead and the alarm stopped. The alarm had been sounding for just less than one minute. Appellant told her to move over to the passenger side and began getting into the driver's side of the car. As he did, she moved to the passenger's side, opened the door, and got out. He grabbed for her but did not touch her.

Watkins screamed and ran to the door of the school's cafeteria building. A cafeteria employee came out and asked what was wrong. Watkins said, "A man attacked me," pointing toward the parking lot where appellant was walking away. Watkins testified that although the lot was full of parked cars, she had not seen any other people in the parking lot.

Linda Seal, a food service supervisor at the high school, testified she ran outside when she heard screaming in the parking lot. Watkins ran toward her screaming for help, saying, " 'That man is trying to get me.' " Watkins pointed toward a man walking in the parking lot. Seal saw a "very large,

Black man" wearing slacks, a hat, and a long-sleeved shirt; he looked directly at Seal from a distance of about 40 feet. Seal and Watkins ran into Seal's office.

Larry Pisani, a school counselor, had just pulled into the parking lot. Seal told him a girl had been attacked in the parking lot and the attacker was walking toward the park. When Pisani entered the parking lot, he had seen Watkins run past his car, screaming, toward Seal. Pisani began following on foot the man Seal had pointed out. He followed appellant from a distance of 15 to 20 feet, asking Johnny Brandt, a student who had pulled into the parking lot, to come with him.

Appellant began to run across Covina Boulevard, then stopped and turned toward Pisani and Brandt. Pisani testified appellant said, " 'Do you guys want to play?' " Brandt heard him say, " 'Do you want drama? Is this what you want?' " Appellant reached behind his back and Pisani cowered, thinking appellant was reaching for a weapon. Appellant came toward Pisani and threw a punch at him with a gloved fist but did not hit him. Appellant then began to run toward Brandt. When two other people carrying walkie-talkies approached, appellant turned and began walking toward the park again.

Ronald Letourneau, an assistant principal, was told by a woman named Janet Caraway that a student had been assaulted in the parking lot. Letourneau ran to the cafeteria where he was told by Seal what had happened. He went outside and a school proctor, Lupe Lorenzo, pointed to the northeast area of the parking lot. Letourneau saw Pisani in the parking lot and appellant in the middle of Covina Boulevard. Letourneau ran toward appellant and told him to stop but he instead walked toward the park. Letourneau called Covina Police Officer Dan Jacobs on his walkie-talkie.

Jacobs, the Charter Oak High School resource officer, received a call over his school radio that a female had been attacked in the parking lot. He walked toward the parking lot and saw Letourneau waving his hands over his head. Jacobs heard Letourneau speaking over the walkie-talkie, indicating that appellant, whom Jacobs could also see, was the one who attacked the girl. Jacobs got into his patrol car and drove toward the park, pulling up near appellant. He turned on his overhead lights and sounded his air horn, but appellant continued walking away. Jacobs got out of his car, drew his gun, and ordered appellant to stop two or three times before appellant did so. Other police officers began arriving and appellant was handcuffed. Letourneau had seen appellant throw an object away from him, and the object was later discovered to be a wallet containing identification in Watkins's name.

Jacobs went back to the school and spoke to Watkins. Jacobs then drove Watkins to the park in his police car to see if she could make a positive

identification of appellant. On the way there, Jacobs told Watkins "that just because there's police officers around an individual, that maybe the individual is handcuffed, that I wanted her to make a positive and be sure that this was the person that had attacked her in the parking lot." When Watkins saw appellant, she said, "Yes, that's him." She began to cry and slumped down in the car.

Watkins had stated her wallet, keys, pager, and bracelet were missing. She had a burn mark on her face which she believed was caused by appellant's tight grip around her mouth with his gloved hand, and she had scratches on her arm.

Seal went to Watkins's car and found the passenger door open; she removed the keys from the ignition. Seal found Watkins's pager about 20 feet from the car and her bracelet "fairly near" the car.

Appellant did not testify or call any witnesses.

## DISCUSSION

### I. *Count II (Kidnapping During the Commission of Carjacking)*

#### A. *No Substantial Evidence of Kidnapping During the Commission of Carjacking*

The Attorney General concedes that the evidence is insufficient to support appellant's conviction on count II for kidnapping during the commission of carjacking. Section 209.5 states: "(a) Any person who, *during the commission of a carjacking* and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking shall be punished by imprisonment in the state prison for life with the possibility of parole. [¶] (b) This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance *from the vicinity of the carjacking*, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (Italics added.)

Respondent acknowledges that based on the holding in *People v. Contreras* (1997) 55 Cal.App.4th 760, 765 [64 Cal.Rptr.2d 233], a violation of section 209.5 "during the commission of a carjacking" requires a completed

offense of carjacking. Respondent further concedes that "[b]ecause Watkins escaped from the passenger side of her parked and stationary automobile during the attempted carjacking, appellant did not move Watkins at all *from the vicinity* of the carjacking, as required by section 209.5, subdivision (b)." (Italics added.) Respondent states that "the evidence at most shows appellant attempted to carjack Watkins's vehicle." In short, there could be no kidnapping during the commission of carjacking because there was no completed carjacking.

## B. *Instructional Error*

Appellant also contends that the conviction of kidnapping during the commission of carjacking must be reversed because of instructional error. The jury was instructed, as part of CALJIC No. 9.54.1 regarding kidnapping during the commission of carjacking (§ 209.5, subd. (a)), that "[c]arjacking is the taking of a motor vehicle in the possession of another, from his or her person or immediate presence, against his or her will, by means of force or fear, and with the specific intent to either permanently or temporarily deprive the person in possession of the vehicle of his or her possession of the motor vehicle."

However, the jury also was instructed with CALJIC No. 9.55, as follows: "Where a person is charged with the crime of kidnapping for the purpose of . . . carjacking, it is not necessary to establish that this purpose was accomplished. The crime is complete if the kidnapping is done for that purpose."

Appellant contends the use of this latter instruction was erroneous because, as respondent concedes, kidnapping during the commission of carjacking does indeed require a completed crime of carjacking, and not simply that there be a kidnapping for the purpose of carjacking. (*People* v. *Contreras, supra,* 55 Cal.App.4th at p. 765.) Respondent asserts that because it has agreed that the evidence was insufficient to support a conviction for kidnapping during the commission of a carjacking, we need not address the issue of instructional error. We agree that for the purpose of reversing the conviction for kidnapping during the commission of carjacking, we need not further elaborate on the clearly accurate contention, which follows from the holding in *People* v. *Contreras,* that the use of CALJIC No. 9.55 is erroneous when applied to the crime of kidnapping during the commission of carjacking.

However, respondent asserts that although we must reverse the conviction for kidnapping during the commission of carjacking, we can and should

reduce it to a conviction for the necessarily lesser included offense of attempted carjacking. Given appellant's contention that the use of CALJIC No. 9.55 has a bearing on our ability to reduce the conviction to one for attempted carjacking, we address that contention below.[2]

### C. *Reduction to the Lesser Included Offense of Attempted Carjacking*

■ "[A] violation of section 209.5 'during the commission of a carjacking' requires a completed offense of carjacking." (*People* v. *Contreras*, *supra*, 55 Cal.App.4th 760, 765.) Therefore, carjacking is a lesser included offense of kidnapping during the commission of carjacking. (*Ibid.*) It follows that attempted carjacking is also a lesser included offense of kidnapping during the commission of a carjacking. " 'The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' " (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].)

Respondent asserts that in light of the evidence presented at trial, we can and should reduce appellant's conviction to the lesser included offense of attempted carjacking. (See §§ 215 [carjacking defined], 664 [attempts; punishment].) Section 1181, subdivision 6, states: "When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."

Appellant agrees that attempted carjacking is a necessarily included offense of the charged crime of kidnapping during the commission of carjacking, and that the facts furnish substantial evidence of an attempted carjacking. Indeed, appellant states that "If the court decides to reduce count I [*sic*] to attempted carjacking, *appellant would stipulate to permit the court to reduce count II to attempted carjacking.*" (Italics added.) ■ However, appellant then questions whether we have the power to reduce the verdict to

---

[2]We briefly note that appellant argued in his opening brief that the conviction for kidnapping during the commission of carjacking must be reversed because the trial court had a sua sponte duty to instruct the jury on carjacking as a lesser included offense. However, given our conclusion that there was no substantial evidence to support a finding of a completed carjacking, we reject this as a basis for reversal of the conviction. (See *People* v. *Hawkins* (1995) 10 Cal.4th 920, 954 [42 Cal.Rptr.2d 636, 897 P.2d 574] [lesser included offense instruction need not be given if unsupported by evidence].)

attempted carjacking because, he argues, instructional error resulted in the jury's not reaching the findings necessary to support a conviction for attempted carjacking.

Appellant argues that in light of the fact that CALJIC No. 9.55 was given to the jury, we cannot reduce his conviction for kidnapping during the commission of carjacking to one for attempted carjacking. "Here, the jury never rendered a guilty verdict for attempted carjacking. Under the erroneous instructions, the jury found, at most, that appellant acted with the purpose of committing a carjacking. Acts performed with the purpose of committing carjacking do not necessarily amount to attempted carjacking. A factual question exists whether appellant's acts went beyond the mere preparation in order to constitute a criminal attempt. Since this jury never received instructions to decide that question, a reviewing court would have to make a factual decision in a criminal case which a jury never made, a power prohibited by the Federal Constitution." We disagree.

■ "An attempt to commit a crime consists of a specific intent to commit the crime, and a direct but ineffectual act done towards its commission. (*People* v. *Siu* (1954) 126 Cal.App.2d 41, 43 . . . ; CALJIC No. 6.00; § 664.) Commission of an element of the underlying crime other than formation of intent to do it is not necessary. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 453 . . . .) Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design will be sufficient. (See *People* v. *Siu, supra,* 126 Cal.App.2d 41, 43 and CALJIC No. 6.00 approved in *People* v. *Dillon, supra.*)" (*People* v. *Ross* (1988) 205 Cal.App.3d 1548, 1554 [253 Cal.Rptr. 178].)[3]

■ By convicting appellant of kidnapping during the commission of carjacking, the jury in this case indisputably found that appellant kidnapped Watkins for the purpose of committing a carjacking. The jury was given the definition of carjacking within the context of CALJIC No. 9.54.1, which also told them that "[t]he specific intent to facilitate the commission of carjacking must be present when the kidnapping commences." Under CALJIC No. 9.55,

---

[3]We note that in the course of being instructed that it could find appellant guilty of the lesser included offense of attempted kidnapping during the commission of carjacking on count II, the jury was given CALJIC No. 6.00, defining attempts.

Neither party argues for reduction of the conviction to attempted kidnapping during the commission of carjacking. We therefore need not decide whether such a crime exists, although if it does, under the language of section 209.5, it appears a completed carjacking would be a requirement.

they were told, "Where a person is charged with the crime of kidnapping for the purpose of . . . carjacking, it is not necessary to establish that this purpose was accomplished. The crime is complete if the kidnapping is done for that purpose." Although CALJIC No. 9.55 is erroneous when used in connection with the crime of kidnapping during the commission of carjacking because ·a completed carjacking is a necessary element of that crime, its use here does not prevent us from reducing the conviction to the crime of attempted carjacking, in which a completed carjacking obviously is not required. In short, under the instructions as given, the jury found both required elements of attempted carjacking: (1) appellant had the specific intent to facilitate the commission of carjacking when the kidnapping commenced; and (2) he carried out a direct but ineffectual act done towards the commission of carjacking by kidnapping her—forcibly moving her—with the intent to carjack, even though that act ultimately was ineffectual in accomplishing a carjacking. The jury made all of the requisite factual findings to support a reduction of the conviction of count II to attempted carjacking pursuant to section 1181, subdivision 6.

## II. *Count I (Kidnapping for Robbery)*

Appellant was convicted of kidnapping for robbery. (§ 209, subd. (b).)[4] He contends the evidence was insufficient to support a finding that his movement of Watkins within the parking lot substantially increased the risk of harm to her or was more than incidental to the commission of the robbery. We find no merit in this contention.

As stated in *People* v. *Rayford* (1994) 9 Cal.4th 1, 12 [36 Cal.Rptr.2d 317, 884 P.2d 1369], "Kidnapping for robbery, or aggravated kidnapping, requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 . . . ; *In re Earley* (1975) 14 Cal.3d 122, 127-128 . . . .) These two aspects are not mutually exclusive, but interrelated.[5] [¶] As for the first prong, or whether the movement is merely incidental to the crime of robbery, the jury considers the 'scope

[4]That section read at the time of the offense: "Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole." (Stats. 1990, ch. 55, § 3, p. 394; see *People* v. *Martinez* (1999) 20 Cal.4th 225, 232, fn. 4 [83 Cal.Rptr.2d 533, 973 P.2d 512] [noting that in 1997, the Legislature amended § 209, subd. (b) to codify decisional authority discussed below regarding asportation requirement, with the exception that the statute does not require that the movement "substantially" increase the risk of harm to the victim].)

[5]The jury was instructed properly regarding the asportation requirement, using CALJIC No. 9.54.

and nature' of the movement. [Citation.] This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong. [Citation.]"

"The second prong of the *Daniels* test refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in robbery. (*In re Earley, supra,* 14 Cal.3d at p. 131; *People* v. *Lara* (1974) 12 Cal.3d 903, 908, & fn. 4 . . . .) This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. (See, e.g., *People* v. *Lara, supra,* 12 Cal.3d at p. 908 & fn. 4 [examples of such risk of harm 'include not only desperate attempts by the victim to extricate himself but also unforeseen intervention by third parties']; *In re Earley, supra,* 14 Cal.3d at p. 132 ['asportation gave rise to dangers, not inherent in robbery, that an auto accident might occur or that the victim might attempt to escape from the moving car or be pushed therefrom by (defendant)']; cf. *People* v. *Caudillo* (1978) 21 Cal.3d 562, 574 . . . [aggravated kidnapping includes review of such factors as 'the defendant's motivation to escape detection' and 'the possible enhancement of danger to the victim resulting from the movement'].) The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. (*In re Earley, supra,* 14 Cal.3d at p. 132; *People* v. *Lara, supra,* 12 Cal.3d at p. 908.)" (*People* v. *Rayford, supra,* 9 Cal.4th at pp. 13-14; see also *People* v. *Martinez, supra,* 20 Cal.4th at p. 233.)

Appellant argues that none of the *Rayford* factors occurred here because Watkins was moved only 25 to 40 feet entirely within the parking lot, toward a high school about to break for lunch recess, into a car with an alarm sounding, which movement in fact made Watkins's escape possible. After she exited the car, she ran about 40 feet to the school building, during which time she was seen and heard by Seal and Pisani. Appellant emphasizes that no weapon was involved, and contends the movement of Watkins did not give him the opportunity to commit additional crimes. We disagree with appellant's analysis of the facts.

Appellant's forcing Watkins to move 40 feet within the parking lot from her boyfriend's truck to her car—by no means an insubstantial distance—if considered alone did not substantially increase the risk of harm to her. The critical factor which substantially increased the risk of harm to Watkins occurred when he forced her to move the 40 feet in order to then push her into her car. Although the car alarm was sounding, once he pushed her into

the car, she was no longer in public view as when she was in plain sight with appellant holding his hand over her mouth—a situation which would have aroused concern immediately in any onlookers.

The cases relied on by appellant, *In re Crumpton* (1973) 9 Cal.3d 463 [106 Cal.Rptr. 770, 507 P.2d 74] and the cases cited therein at pages 466-467, are distinguishable. In every case, the victims were removed from public view within a place of business or other enclosure. For example, in *Crumpton* a service station attendant was moved 30 feet and forced to lie on the ground behind a parked truck. In none of the cases were the victims moved into a vehicle in which they could be transported away. Here, the evidence shows that appellant moved the victim into a car and intended to drive away with her: he forced her over to her car, pushed her in and started to get in himself, then grabbed at her in an attempt to prevent her from fleeing. She thus was subjected to a multitude of risks not present in the cases relied upon by appellant.

Appellant's argument hinges on the fact that the dangers inherent in moving Watkins inside the car did not in fact materialize, but *Rayford* instructs that this does not mean that the risk of harm was not increased. It was only because Watkins thought and moved so quickly and exited from the passenger side door that the increased risks did not ripen into further harm. It is significant that appellant already had taken possession of Watkins's wallet and keys when he forced her into the car. When she asked him not to hurt her, to just take everything, he had ambiguously replied, " 'I plan on it.' " From these facts the jury reasonably could infer that appellant intended to increase the risk of harm to Watkins and commit additional crimes after forcing her into the car out of public view.[6]

An increased risk of harm was manifested by appellant's demonstrated willingness to be violent, having knocked her to the ground, gripped her mouth so tightly as to leave a burn mark on her face, and grabbed for her as she fled the car.

There was substantial evidence to support the jury's finding the asportation requirement for conviction of kidnapping for robbery. Appellant's conviction for kidnapping for the purpose of robbery is affirmed.

[6]The trial court remarked at sentencing, "I kept asking myself during the trial, why Miranda? . . . Miss Watkins did not broadcast any message that will tell an opportunist robber that he would score big financially that day. Was it Miss Watkins' Ford Mustang that [appellant] was really after? It's difficult to believe that since [appellant's] Mercedes Benz was also in the parking lot. [Appellant] was after Miss Watkins' person, and her property was secondary. She was the target that day." The probation report indicates appellant had driven his own car, a 1978 Mercedes, to the Charter Oak High School parking lot on the day of the incident. Such evidence was not presented to the jury.

### III. *The Prior Serious Felony Enhancement and Strike Allegation*

Appellant was charged in an amended information with having suffered, within the meaning of the Three Strikes law, a prior serious felony conviction for federal bank robbery in violation of title 18 United States Code section 2113(a)[7] in Seattle, Washington.

The People offered as proof certified documents from the United States Department of Justice including a photograph of appellant, a card with appellant's fingerprints and signature which indicates the charge as "Bank Robbery" and the final disposition of 10 years, and a copy of title 18 United States Code section 2113. In addition, the People offered a document entitled "Judgment and Commitment" which indicated appellant "upon his plea of guilty to the lesser included offense of violation of Title 18, United States Code, Sections [*sic*] 2113(a) [the Indictment herein charging a violation of Title 18, United States Code, Sections 2113(a) and 2113(d)[8]]; and the Court being satisfied there is a factual basis for the plea, has been convicted of the offense of violation of Title 18, United States Code, Section 2113(a), a lesser included offense of the violation charged in the Indictment."[9] The trial court found the prior conviction allegations to be true.

■ Appellant points out that the prosecution bears the burden of proving each element of a sentence enhancement beyond a reasonable doubt; a reviewing court must review the record in the light most favorable to the judgment to determine whether substantial evidence supports the factfinder's conclusion, i.e., whether a reasonable trier of fact could have found that the prosecution had sustained its burden of proving the defendant guilty beyond a reasonable doubt. (*People* v. *Tenner* (1993) 6 Cal.4th 559, 566-567 [24 Cal.Rptr.2d 840, 862 P.2d 840].)

---

[7]Title 18 United States Code section 2113(a) states: "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or [¶] Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny— [¶] Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

[8]Title 18 United States Code section 2113(d) states: "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

[9]All further references to "section 2113" are to title 18 United States Code section 2113.

■ Appellant contends that the evidence was insufficient to prove he had engaged in conduct which constitutes a serious felony strike in California, since the federal statute at issue can be violated in different ways, some of which would not qualify as a strike. "[S]ection 2113(a) describes two classes of offenses. Its first paragraph makes it a felony to take or attempt to take property from another by force, fear or intimidation, in certain financial institutions; its second paragraph makes it a felony to enter or attempt to enter such institutions with the intent to commit a felony or larceny therein. (See fn. [7], *ante*.) Thus, proof that a defendant has been convicted for a violation of section 2113(a) (entitled 'Bank Robbery and Incidental Crimes') does not establish which type of offense was committed. [Citation.] . . . [T]he burglary-type offenses described in the second paragraph, while arguably establishing felony burglary in this state (§§ 459-461; [case citations omitted]), do not establish the applicable *serious felony*, 'burglary of a residence' (§ 1192.7, subd. (c)(18))." (*People* v. *Leever* (1985) 173 Cal.App.3d 853, 872 [219 Cal.Rptr. 581], italics in original.) Appellant concedes that the offense described in the first paragraph of section 2113(a) constitutes a serious felony strike under California law. (See *People* v. *Guerrero* (1993) 19 Cal.App.4th 401, 405-407 [23 Cal.Rptr.2d 803].)

The question then is whether the evidence presented was sufficient to establish that appellant was convicted of conduct described in the first paragraph of section 2113(a) rather than in the second paragraph of that statute.

■ A court may look to the entire record of conviction to determine the substance of the prior foreign conviction; but when the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law. (*People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150]; see also *People* v. *Myers* (1993) 5 Cal.4th 1193, 1200 [22 Cal.Rptr.2d 911, 858 P.2d 301].) In *People* v. *Myers,* the Supreme Court explained that the trier of fact is allowed, in determining the truth of an allegation of a prior serious felony conviction under section 667, subdivision (a)(1), "to go beyond the least adjudicated elements of the offense and to consider, if not precluded by the rules of evidence or other statutory limitation, evidence found within the entire record of the foreign conviction." (5 Cal.4th at p. 1201.) In *People* v. *Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184], the Supreme Court offered two interpretations of the term "record of conviction": a technical one, "as equivalent to the record on appeal," or a narrower one, "as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*Id.* at p. 223; see also *People* v. *Houck* (1998) 66

Cal.App.4th 350, 356-357 [77 Cal.Rptr.2d 837] [court construed latter definition as referring to those documents that reliably reflect the conduct for which the defendant was convicted].)

The case of *People* v. *Rodriguez* (1998) 17 Cal.4th 253 [70 Cal.Rptr.2d 334, 949 P.2d 31] is instructive. There, the People had offered at trial only an abstract of judgment to prove a prior conviction for assault (§ 245, subd. (a)(1)), which had been entered pursuant to a guilty plea. The Supreme Court held there was insufficient evidence to support the trial court's finding that the defendant's prior conviction constituted a serious felony under section 1192.7, subdivision (c), and also a strike under section 667, subdivision (d)(1), because the abstract of judgment showed no more than the least adjudicated elements of the prior conviction. "Under that section [245, subd. (a)(1)], as relevant here, only those crimes are 'serious' felonies in which the defendant 'personally inflict[ed] great bodily injury on any person, other than an accomplice, or . . . personally use[d] a firearm' ([§ 1192.7], subd. (c)(8)), or 'personally use[d] a dangerous or deadly weapon' ([§ 1192.7], subd. (c)(23)). One may thus violate section 245(a)(1) in two ways that would not qualify as 'serious' felonies under section 1192.7, subdivision (c): First, one may aid and abet the assault without personally inflicting great bodily harm or using a firearm. Second, one may commit the assault with force 'likely' to cause great bodily injury without, however, actually causing great bodily injury or using a deadly weapon. Accordingly, the least adjudicated elements of the crime defined in section 245(a)(1) are insufficient to establish a 'serious' felony. [Citations.]" (*People* v. *Rodriguez, supra,* at p. 261, italics omitted.)

In the present case, the People contend they offered evidence which established more than the least adjudicated elements of the crime defined in section 2113(a). To wit, they offered a fingerprint card listing the charge as "Bank Robbery," as well as the judgment of conviction which indicates appellant pled guilty "to the lesser included offense of violation of . . . Sections [*sic*] 2113(a) [the Indictment herein charging a violation of Title 18, United States Code, Sections 2113(a) and 2113(d)]." "Therefore, respondent submits, appellant's prior federal conviction was more likely than not a violation of the first paragraph of section 2113(a), which requires the use of force and violence or intimidation."

■ However, even viewing the record in the light most favorable to the judgment, we do not find the proffered evidence to be substantial such that a reasonable trier of fact could have found that the prosecution had sustained its burden of proving the defendant guilty of a prior serious felony conviction beyond a reasonable doubt. (*People* v. *Tenner, supra,* 6 Cal.4th at pp. 566-567.)

Even if we assume, without deciding the hearsay and relevance issues raised by appellant, that the fingerprint card was admissible, the reference therein to "Bank Robbery" does not "reliably reflect[] the facts of the offense for which the defendant was convicted." (*People v. Reed, supra,* 13 Cal.4th at p. 223.) The trial court could not have relied on it as establishing that appellant pled guilty to a violation of the first paragraph of section 2113(a). That statute is entitled "Bank Robbery and Incidental Crimes" and the reference on the fingerprint card is on its face only a reference to the statute as a whole.

In addition, while the judgment of conviction indicates appellant pled guilty "to the lesser included offense of violation of . . . Sections [*sic*] 2113(a)," he did not plead guilty to the charges as stated in the indictment. The reference to "the lesser included offense" does nothing to clarify whether the conduct to which he admitted by way of pleading guilty fell under the first or second paragraph of section 2113(a). Such language could mean he was convicted of a lesser included offense in not pleading guilty to the charge in the indictment under section 2113(d); alternatively, he may have pled guilty to and been convicted of a lesser included offense within the crimes described in section 2113(a). In addition, we note that the charges apparently contained in the indictment do not establish the nature of his conduct; appellant did not plead guilty to the charges as stated in the indictment. (*People v. Reynolds* (1989) 211 Cal.App.3d 382, 389-390 [259 Cal.Rptr. 352] [reference in record of conviction to a conviction for an included offense of the crime charged in the information or indictment "cannot unambiguously incorporate any specific elemental fact enunciated in the information or indictment"].)

We decline respondent's invitation to adopt the reasoning found in *People v. Guerrero, supra,* 19 Cal.App.4th 401, in which the Court of Appeal concluded that in pleading guilty to a violation of section 2113(a), the defendant "admitted all of the elements of the offense which included a taking by force or a mere larceny. In other words, defendant admitted culpability under both paragraphs of 18 United States Code section 2113(a) and he may not later relitigate the sufficiency of the evidence of the underlying felony conviction." (19 Cal.App.4th at pp. 408-410.) We instead agree with the Court of Appeal in *People v. Cortez* (1999) 73 Cal.App.4th 276 [86 Cal.Rptr.2d 234], that the above quoted conclusion in *People v. Guerrero* was implicitly rejected by the Supreme Court in *People v. Rodriguez, supra,* 17 Cal.4th 253, wherein defendant's guilty plea to a violation of section 245, subdivision (a)(1) was held to be insufficient evidence that defendant had used a deadly weapon, which would make the prior conviction a serious felony. (See discussion of *Rodriguez, ante.*)

The evidence presented by the People did not suffice to disclose the facts of the prior offense actually committed, and therefore the trial court should have presumed that the prior conviction was for the least offense punishable under the federal law, which did not constitute a serious felony strike. (See *People* v. *Guerrero, supra,* 44 Cal.3d at p. 355; see also *People* v. *Myers, supra,* 5 Cal.4th at p. 1200.)

Since retrial on the prior conviction allegation is not precluded by double jeopardy principles (*People* v. *Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121], affd. *sub nom. Monge* v. *California* (1998) 524 U.S. 721 [118 S.Ct. 2246, 141 L.Ed.2d 615]), remand for this limited purpose is the appropriate remedy.

### IV. *Imposition of Fines*

*(Issues Raised in Respondent's Brief)*

In the respondent's brief, the Attorney General points out that the abstract of judgment does not reflect the restitution fine imposed on appellant pursuant to section 1202.4, subdivision (b), in the amount of $1,000. We therefore order that the abstract of judgment be corrected to reflect the section 1202.4, subdivision (b) fine in that amount.

In addition, the Attorney General argues that the trial court had a jurisdictional responsibility to impose an additional fine pursuant to section 1202.45, in the same amount as the section 1202.4, subdivision (b) fine, to be suspended unless the defendant's parole is revoked. We agree (*People* v. *Hong* (1998) 64 Cal.App.4th 1071, 1084-1085 [76 Cal.Rptr.2d 23]), and therefore order that the judgment is to be so modified. The abstract of judgment must also be corrected to reflect imposition of the section 1202.45 fine.

### DISPOSITION

The matter is remanded to the trial court for retrial of the prior serious felony enhancement and strike allegation, and for resentencing in the event the prior serious felony allegation is not proved.

The judgment of conviction for kidnapping during the commission of carjacking is modified to attempted carjacking and the matter is remanded to the trial court for resentencing. The sentence imposed for attempted carjacking is to be stayed pursuant to section 654, as was the conviction for kidnapping during the commission of carjacking.

The judgment is modified to provide that appellant is assessed a fine in the amount of $1,000, pursuant to section 1202.45, to be suspended unless appellant's parole is revoked. The abstract of judgment is to be corrected to reflect the section 1202.45 fine, and also is to be corrected to reflect the section 1202.4, subdivision (b) fine in the amount of $1,000 which was properly imposed by the trial court.

In all other respects, the judgment is affirmed. The trial court is ordered upon issuance of the remittitur to send a corrected abstract of judgment to the Department of Corrections.

Epstein, J., and Hastings, J., concurred.

A petition for a rehearing was denied October 20, 1999, and appellant's petition for review by the Supreme Court was denied January 13, 2000.