Filed 2/3/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B331474 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA509982) |
| v. | |
| STEVEN ELLIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Renee F. Korn, Judge. Affirmed in part, reversed in part, and remanded for resentencing.

Laura R. Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Kenneth C. Byrne and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Steven Ellis appeals from his judgment of conviction of kidnapping, attempted kidnapping, dissuading a witness from reporting a crime, and making criminal threats. Among other arguments, Ellis contends his kidnapping conviction must be reversed because the evidence was insufficient to establish that he moved the victim a substantial distance. Based on the totality of the circumstances, we conclude that there was no substantial evidence supporting the asportation element of the kidnapping offense. We accordingly reverse Ellis's conviction for kidnapping, reduce the conviction on that count to the lesser included offense of felony false imprisonment, and remand for a full resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

## I. Charging information

In an amended information, Ellis was charged with the attempted kidnapping of Blanca C. (Blanca) (Pen. Code[1] §§ 664, 207, subd. (a)); count 1), the kidnapping of Yasmin M. (Yasmin) (§ 207, subd. (a); count 2), dissuading a witness, Jessica H. (Jessica), from reporting a crime (§ 136.1, subd. (b)(1); count 3), criminal threats against Blanca (§ 422, subd. (a); count 4), and criminal threats against Jessica (§ 422, subd. (a); count 5). Ellis also was charged with the attempted kidnapping of Yasmin (§§ 664, 207, subd. (a); count 6) as an alternative to the kidnapping charge in count 2. The information further alleged that the kidnapping and attempted kidnapping charges involved aggravating factors within the meaning of California Rules of Court, rule 4.421(a)(1).

---

[1] Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

2

## II. Evidence at trial
### A. Charges related to Yasmin

On October 17, 2022, at about 8:30 p.m., then 16-year-old Yasmin and her friend were walking to a bus stop on First Street in Boyle Heights. The bus stop was on a sidewalk directly in front of a pizzeria and across the street from a Metro train station. As the girls approached the bus stop, Yasmin saw a man whom she later identified as Ellis walking toward them. Ellis was wearing a shirt, but was naked from the waist down. Yasmin pulled her friend behind her, and continued walking on the sidewalk close to the entrance to the pizzeria.

Ellis stopped in front of Yasmin and loudly said, "You're coming with me." He grabbed her throat with one hand, and her shirt with the other hand. Ellis then started pulling Yasmin away from the sidewalk and toward the street. At trial, Yasmin testified that Ellis moved her "to the middle of the street where a car could hit us." She also testified that there was usually traffic in that area, "but there wasn't at that time." When Yasmin's friend yelled at her to fight back, Yasmin dropped the items in her hands and began pushing Ellis away from her.

Yasmin believed that she struggled with Ellis for about five minutes. When patrons inside the pizzeria noticed the struggle, they came outside and shouted at Ellis to let Yasmin go. At that point, Ellis released Yamin and started to walk away from the scene. A bystander on a bike who witnessed the incident then began fighting with Ellis. With her cell phone, Yasmin was able to capture a short video of the bystander's altercation with Ellis, which was played for the jury at trial.

Yasmin further testified that, when Ellis first accosted her on the sidewalk, there was a Metro train stopped at the station

3

across the street. During the struggle, Ellis moved Yasmin in the direction of the train. However, she did not think he was trying to force her onto the train. When asked what she thought Ellis was trying to do, Yasmin stated, "I just thought that he was going to take me somewhere. But I'm not sure where . . . he wanted to take me."

At trial, the prosecutor introduced photographs of the area, and Yasmin identified the specific locations where Ellis grabbed her and dragged her into the street. The record does not include a measurement of the actual distance that Ellis moved Yasmin during the incident. However, in their closing arguments, both the prosecutor and defense counsel described the distance as approximately 10 feet.

### B.    Charges related to Blanca and Jessica

Shortly after the incident with Yasmin, Blanca and her friend, Jessica, were walking on the sidewalk in the area of First Street and Mission Road. Jessica observed a man whom she later identified as Ellis walking toward them. He wore a shirt and socks, but was otherwise naked. After the women turned the corner, Ellis caught up to them, grabbed Blanca from behind, and placed her in a chokehold. As soon as Ellis accosted Blanca, he also told the women that he was going to kill both of them.

While Blanca struggled to escape from Ellis, Jessica ran into the street to seek help from passing cars. Ellis dragged Blanca approximately 10 feet down the sidewalk. At some point, Jessica pulled out her cell phone, and told Ellis that she was recording him with it. She also told Ellis that the police were on their way. According to Jessica, Ellis replied, "Drop the phone or I'll kill you." According to Blanca, Ellis said, "Don't call the cops. I'm going to kill you and then I'm going to kill her." Regardless,

4

after Ellis saw the phone, he let Blanca go and lunged at Jessica. Both women then fled, screaming for help as they ran down the street. At trial, Blanca testified that the attack lasted about five minutes.

The following day, the police detained Ellis near the area where the two attacks occurred. Blanca was taken to a field show-up where she identified Ellis as her attacker.

## III. Verdict and sentencing

The jury found Ellis guilty of the attempted kidnapping of Blanca (count 1), the kidnapping of Yasmin (count 2), dissuading Jessica from reporting a crime (count 3), and making criminal threats against both Blanca (count 4) and Jessica (count 5). Because the jury convicted Ellis of the kidnapping charge in count 2, it did not reach a verdict on the attempted kidnapping charge in count 6, and the trial court dismissed that count under section 1385.

Ellis waived his right to a jury trial on the aggravating factor allegations. In a bifurcated proceeding, the trial court found the alleged aggravating factor to be true beyond a reasonable doubt. The trial court sentenced Ellis to a total term of nine years and six months in state prison consisting of: the upper term of eight years on the kidnapping count, a consecutive term of 10 months on the attempted kidnapping count, a consecutive term of eight months on the dissuading a witness count, and concurrent terms of two years on each of the criminal threats counts.

Ellis filed a timely appeal.

**DISCUSSION**

**I. Sufficiency of the evidence supporting the kidnapping conviction**

On appeal, Ellis challenges the sufficiency of the evidence supporting his conviction in count 2 for the kidnapping of Yasmin. Ellis contends his conviction must be reversed because the evidence was insufficient to support a finding that he moved Yasmin a substantial distance. We agree Ellis's kidnapping conviction was not supported by substantial evidence.

**A. Governing law**

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Morales* (2020) 10 Cal.5th 76, 88.) We " 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.' " (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) Our "task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ' " 'be reasonably reconciled with the defendant's innocence.' " ' [Citations.] The relevant inquiry is whether, in light of all the evidence, a reasonable [jury] could have found the defendant guilty beyond a reasonable doubt." (*People v. Gomez* (2018) 6 Cal.5th 243, 278.)

Section 207, subdivision (a) defines the crime of simple kidnapping. (*People v. Morgan* (2007) 42 Cal.4th 593, 605.) It provides, in relevant part, that "[e]very person who forcibly, or

6

by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person . . . into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) To prove simple kidnapping, the prosecution must establish "that (1) the defendant took, held, or detained another person by using force or by instilling reasonable fear; (2) using that force or fear, the defendant moved the other person, or made the other person move a substantial distance; and (3) the other person did not consent to the movement." (*People v. Burney* (2009) 47 Cal.4th 203, 232.) The requirement that the defendant move the victim a substantial distance is commonly referred to as the asportation element. (*People v. Martinez* (1999) 20 Cal.4th 225, 236 (*Martinez*), overruled on other grounds in *People v. Fontenot* (2019) 8 Cal.5th 57, 70.)

Originally, the asportation element of simple kidnapping depended exclusively on the actual distance moved. (*People v. Gomez*, *supra*, 6 Cal.5th at p. 304; *Martinez*, *supra*, 20 Cal.4th at p. 233.) However, in its 1999 decision in *Martinez*, the California Supreme Court held that "the jury should consider the totality of the circumstances." (*Martinez*, at p. 237.) "Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Ibid*.) Moreover, "[w]hile the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, . . . the jury

7

need only find that the victim was moved a distance that was 'substantial in character.' " (*Ibid*.)

**B.     The evidence was insufficient to support the asportation element of simple kidnapping**

In challenging the sufficiency of the evidence supporting his conviction for the kidnapping of Yasmin, Ellis contends the prosecution failed to prove the asportation element of the offense. He argues that the actual distance he moved Yasmin was too short to satisfy the asportation requirement regardless of the contextual factors articulated in *Martinez*. Alternatively, he asserts that, when the contextual factors are considered, the movement of Yasmin was not substantial in character. We reject Ellis's first claim, but conclude his second claim has merit.

With respect to his first claim, Ellis argues that, because he moved Yasmin only a "very short distance," the movement was insufficient as a matter of law to prove the asportation required for kidnapping. In support of this argument, Ellis points to the statement in *Martinez* that "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (*Martinez, supra*, 20 Cal.4th at p. 237.) Ellis contends this statement means there can be no asportation when the actual distance the victim is moved is "very short," thus rendering any contextual factors irrelevant. This claim fails. The Supreme Court in *Martinez* expressly rejected the asportation standard that used to govern simple kidnapping because it was based exclusively on measured distance. (*Id*. at pp. 235–236.) The Court instead held that "the movement must be 'substantial in character' [citation], but . . . the trier of fact may consider more than actual distance." (*Id*. at p. 235.) The Court reasoned that "nothing in the language of

8

section 207(a) limits the asportation element solely to actual distance," and that "limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable." (*Id*. at p. 236.) Accordingly, "under current law, 'no minimum distance is required to satisfy the asportation requirement,' and the precise distance need not be proven." (*People v. Waqa* (2023) 92 Cal.App.5th 565, 578; accord, *People v. Hughey* (2024) 105 Cal.App.5th 216, 222.)

With respect to his second claim, Ellis asserts that the evidence was insufficient to support the asportation element of kidnapping because the movement of Yasmin was not substantial in character based on the totality of the circumstances. The evidence at trial established that, during a five-minute attack, Ellis forcibly moved Yasmin from the sidewalk to the middle of the street. While the record does not disclose the actual distance involved, both the prosecution and the defense argued to the jury that the distance was approximately 10 feet. In determining whether the movement increased the risk of harm to the victim, "[m]easured distance . . . is a relevant factor, but one that must be considered in context, including the nature of the crime and its environment. In some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) Generally, "[t]he environment the defendant creates within that distance is the critical factor." (*People v. Hughey*, *supra*, 105 Cal.App.5th at p. 228; see *People v. Shadden* (2001) 93 Cal.App.4th 164, 169 ["[w]here movement changes the victim's environment, it does not have to be great in distance to be substantial"].)

9

In this case, the totality of the circumstances failed to support a finding that Ellis moved Yasmin a distance that was " 'substantial in character.' " (*Martinez*, *supra*, 20 Cal.4th at p. 237.) Here, the movement of Yasmin from the sidewalk to the street did not decrease the likelihood of detection. Where the defendant moves the victim from public view into a more private or secluded area, it reduces the possibility of detection, escape, or rescue. (*People v. Dominguez*, *supra*, 39 Cal.4th at pp. 1153–1154.) It appears both the sidewalk and the street were in full public view. While the sidewalk where Ellis first accosted Yasmin was near the entrance to a pizzeria, there was no evidence that the middle of the street was more concealed or secluded. Rather, the evidence showed that Yasmin's friend on the sidewalk, as well as the patrons inside the pizzeria, were able to see Yasmin as she fought with Ellis in the middle of the street. Indeed, the attack stopped when the patrons who witnessed the struggle on the street yelled at Ellis to let Yasmin go. In addition, the parties estimated the discrete movement here to only be 10 feet.

Moreover, the evidence failed to show that moving Yasmin from the sidewalk into the middle of the street increased Ellis's opportunity to commit additional crimes. Yasmin testified that Ellis held her by her throat and her shirt throughout the attack, that she continuously resisted by attempting to push him away, and that he released her after she fought back and the patrons from the pizzeria intervened. The movement from the sidewalk to the street thus did not enhance Ellis's "ability to 'gain control over [Yasmin] and ensure[] her compliance.' " (*People v. Waqa*, *supra*, 92 Cal.App.5th at p. 582.) There is also nothing in the record to indicate that Ellis was more likely to commit a rape,

10

robbery, or other offense while he was holding Yasmin in the street rather than on the sidewalk.

The People assert that the middle of the street posed a greater risk of harm to Yasmin than the sidewalk because she could have been struck by a car. Because Ellis pulled Yasmin into the street during the attack, there was a danger that she could have been hit by a passing vehicle if she tried to escape by running away. However, Yasmin testified that, although there was usually traffic in the area where the attack occurred, there was not any traffic during the attack. Further, the risk that a person will be hit by a vehicle is always greater on the street than on the sidewalk. The People do not cite to any cases, and we are aware of none, where the danger inherent in being on a street was sufficient to establish the asportation element of kidnapping. Otherwise, a defendant would be guilty of kidnapping whenever a victim was moved into a street or road that was open to vehicular traffic, notwithstanding the absence of any other contextual factors. While the risk of harm posed by passing cars is one factor to consider, it does not, standing alone, prove that the distance the victim was moved was substantial in character.

The People also argue that the movement of Yasmin from the sidewalk to the street increased her risk of harm because Ellis pulled her in the direction of the Metro train that was stopped across the street. At trial, Yasmin testified that she did not think Ellis was trying to force her onto the train, but she did not know where he intended to take her. Even assuming the Metro train was Ellis's target destination, the record does not show how close Yasmin was to the entrance of the train during the attack, or if it would have been possible for Ellis to force Yasmin onto that train before it left the station.

11

In cases where the victim is rescued or escapes in the course of being moved, courts consider whether the movement that did occur was substantial in character. For instance, in *People v. Newman* (2019) 40 Cal.App.5th 68, the defendant broke into the victim's bedroom and moved her at gunpoint "from her bed, through her house, out the door, through the front gate, and almost 200 feet towards his waiting car" before she escaped to a neighbor's house. (*Id*. at p. 71.) Based on the totality of the evidence, this court concluded that a rational jury could have found that the defendant moved the victim a substantial distance, and that "the only reason the distance was not far greater was the victim got away en route." (*Ibid*.; see also *People v. Singh* (2019) 42 Cal.App.5th 175, 188 [moving a young child about 10 feet outside a bus was sufficient for kidnapping because defendant "took him from one environment, the inside of the bus where his mother was, to another environment, outside of the bus where no one knew the child and the child knew no one"]; *People v. Jones* (1999) 75 Cal.App.4th 616, 629–630 [forcing a victim 40 feet across a parking lot and into her car before she escaped was sufficient for kidnapping because "once [defendant] pushed her into the car, she was no longer in public view"].) Here, Ellis's movement of Yasmin 10 feet from the sidewalk to middle of the street did not appreciably change her surrounding environment. In both places, Yasmin was in public view, she had the same ability to call for help or to escape, and Ellis had the same opportunity to commit other crimes.

Considering the totality of the circumstances, we conclude the evidence in this case was insufficient to support a finding that Ellis moved Yasmin a substantial distance, as required for simple kidnapping. Because the prosecution failed to establish

the asportation element of that offense, Ellis's conviction in count 2 for the kidnapping of Yasmin must be reversed.

Where, as here, the appellate court finds there is insufficient evidence to support a conviction for a greater offense, we may modify the judgment of conviction to reflect a conviction for a lesser included offense. (§§ 1181, subd. 6, 1260; see *People v. Bailey* (2012) 54 Cal.4th 740, 748.) Our Supreme Court has held that attempted kidnapping is not a lesser included offense of simple kidnapping because attempted kidnapping is a specific intent crime whereas completed kidnapping is a general intent crime. (*People v. Fontenot, supra,* 8 Cal.5th at pp. 69–71.) False imprisonment by violence or menace (§§ 236, 237), however, is a lesser included offense of kidnapping. (*People v. Salazar* (2023) 15 Cal.5th 416, 420; *People v. Delacerda* (2015) 236 Cal.App.4th 282, 289.) We therefore modify the judgment to reduce Ellis's conviction in count 2 from kidnapping to false imprisonment by violence or menace. We further remand the matter for a full resentencing as to all counts, so that the trial court can exercise its sentencing discretion in light of the changed circumstances. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## II. Imposition of an upper term sentence on the kidnapping conviction

Ellis argues the trial court erred in sentencing him to the upper term of eight years on the kidnapping conviction in count 2. He specifically asserts the trial court improperly relied on a probation report when considering his prior convictions instead of obtaining a certified record of those convictions. He also contends the trial court failed to properly consider his childhood trauma, substance abuse, and mental illness as mitigating factors that would require a lower term sentence.

13

Because we are reversing the conviction in count 2 and remanding for a full resentencing, we need not address Ellis's claim that the trial court erred in imposing the upper term on that count. The parties may raise any arguments regarding the proper consideration of the factors in section 1170, subdivision (b) with the trial court remand.

## III. Imposition of concurrent sentences on the criminal threats convictions

Ellis challenges the trial court's imposition of concurrent terms of two years each on the criminal threats convictions in counts 4 and 5. He claims the trial court should have stayed the sentence on each of these counts under section 654.

Section 654 "bars multiple punishment for separate offenses arising out of a single occurrence when all of the offenses were incident to one objective." (*People v. Cowan* (2010) 50 Cal.4th 401, 498.) At Ellis's sentencing, the trial court initially stated that it was staying the sentences on count 4 for criminal threats against Blanca and count 5 for criminal threats against Jessica. The court then decided to "run those [terms] concurrent with the principal term." The court stated: "Really what the court is doing is to reflect three separate victims in this case. [¶] As to counts 4 and 5, the court is going to impose concurrent sentences, however, in recognition that the court is imposing [a] sentence as to each of the victims."

In imposing concurrent terms on counts 4 and 5, the trial court did not consider whether section 654 required that those sentences be stayed. Instead, it appears that the court first decided to impose consecutive sentences on counts 1, 2, and 3 "to reflect [the] three separate victims in this case." Then, because counts 4 and 5 involved the same victims as counts 1 and 3, the

14

court decided to run the sentences on counts 4 and 5 concurrently with the principle term. However, as our Supreme Court has observed, imposing concurrent sentences "is not correct if section 654 prohibits multiple punishment. . . . Instead, the accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' " (*People v. Jones* (2012) 54 Cal.4th 350, 353.) While "there appears to be little practical difference between imposing concurrent sentences, as the trial court did, and staying sentence on two of the convictions, as [the] defendant urges, the law is settled that the sentences must be stayed to the extent that section 654 prohibits multiple punishment." (*Ibid.*)

Therefore, in resentencing Ellis, the trial court must determine whether the sentences imposed on the criminal threats convictions in counts 4 and 5 should be stayed under section 654. The parties may raise any arguments regarding the applicability of section 654 with the trial court on remand.

## DISPOSITION

The conviction in count 2 for kidnapping is reversed and the judgment is modified to reduce the conviction in count 2 to false imprisonment by violence or menace.  In all other respects, the judgment of conviction is affirmed.  The matter is remanded to the trial court for a full resentencing as to all counts.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.

16