Filed 1/20/15  P. v. Andrade CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALBERT TICO ANDRADE,<br><br>    Defendant and Appellant. | 2d Crim. No. B252846<br>(Super. Ct. No. CR37160)<br>(Ventura County) |

Albert Tico Andrade appeals an order denying his petition for resentencing under Penal Code section 1170.126 of the Three Strikes Reform Act of 2012 ("Act").[1] (§§ 667, 1170.12, 1170.126; Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012).) Andrade contends that there is insufficient evidence to support the trial court's determination that he will pose an unreasonable risk of danger to the public if he is resentenced as a second strike offender.  He contends that section 1170.126 is impermissibly vague and due process requires us to include the standards for predicting current dangerousness that govern *Romero*[2] motions and parole suitability determinations.  He also contends he has a Sixth Amendment right to a jury trial on the question of his current dangerousness.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.)

FACTUAL AND PROCEDURAL HISTORY

Andrade is serving a term of 25 years to life under the three strikes law for a 1995 conviction by jury for vehicle theft. (Veh. Code, § 10851, subd. (a).) His criminal history includes prior felony convictions for attempted robbery and bank robbery. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 211, 664; 18 U.S.C. § 2113(a).)

In a previous appeal, Andrade challenged the underlying third-strike sentence. We remanded his case for resentencing to ensure that the trial court understood it had discretion to reduce Andrade's conviction for vehicle theft to a misdemeanor and to sentence him as a second-strike offender. (*People v. Andrade* (Dec. 19, 1996, B100214 [nonpub. opn.] (*Andrade I*); *People v. Vessell* (1995) 36 Cal.App.4th 285, 295.) The trial court resentenced Andrade as a third-strike offender. It stated, "The defendant's record suggests [that] he is the very kind of guy who ought to be serving 25 to life." (*People v. Andrade* (Jan. 13, 1998, B112277) [nonpub. opn.] (*Andrade II*).) We affirmed the judgment.

In 2012, Andrade filed the current petition for resentencing as a second-strike offender under the authority of the newly enacted Act.[3] The trial court conducted an evidentiary hearing. The People presented documentary evidence of Andrade's criminal history and his behavior while incarcerated. Andrade testified and presented one witness, a representative of a residential substance abuse treatment program. The trial court denied the petition. It determined that Andrade is eligible to be considered for resentencing, but resentencing poses an unreasonable risk of danger to public safety.

In 1987, when Andrade was 20 years old, he was convicted of his first strike offense, attempted robbery. He and another person lay in wait for and attacked a 52-year-old man outside a convenience store in an effort to steal his wallet. (§§ 211, 664.) They hit and kicked the man. When someone tried to come to the man's aid, Andrade attacked that person.

---

[3] Andrade filed a petition for writ of habeas corpus. The trial court treated it as a petition for resentencing authorized by section 1170.126.

While on parole for the attempted robbery in 1988, Andrade committed bank robbery.  (18 U.S.C. § 2113.)  He was charged in a federal indictment with robbing bank tellers "by force, violence, and intimidation," on three occasions in 1988 and 1989.  He pled guilty to two counts.  After he served a federal prison term, he violated the terms of supervised release when he did not report for supervision.  He returned to federal prison in 1993 for eight months after he admitted the violation.  In 1994, Andrade suffered misdemeanor violations.  During a traffic stop in 1995, he was found to have an ice pick in his pants.

In 1995, Andrade committed the vehicle theft for which he is serving a third-strike sentence.  He was 27 years old.  He attacked the driver of the car before he took it and drove the car into the backyard of Theresa Martinez.  In Andrade's words, "I go over there and vandalize their home, the garage and the truck and the fence with the car."  We summarized testimony in *Andrade I*:  "Andrade drove 'peel-outs [and] donuts' in the yard and struck a Christmas tree, a shed, Martinez's truck, and the front door and side wall of the garage.  Andrade then 'ran over' a discarded washer and dryer and 'stuff on the side of the yard.'. . .  '[T]he car was stuck up on the washer and dryer and then he revved the engine [and] the car got down, and [Mrs. Martinez] was trying to cross the street, and he tried to hit her.'"

While incarcerated between 1996 and 2012, Andrade was involved in 19 disciplinary incidents.  These include violent incidents in 1999, 2002, 2006, and 2012.  In 1999, Andrade and another inmate attacked a third inmate in a dining hall, starting a riot.  A hearing officer found Andrade guilty of participating in the riot.  In 2002, Andrade and another inmate chased a third inmate into an exercise yard and attacked him.  A guard found a hand-made sharp metal weapon nearby.  The victim suffered five puncture wounds to his neck and throat.  A hearing officer found Andrade was guilty of battery on an inmate with a weapon.  Andrade testified that in 2006 he was a victim of attempted murder because he refused an "order" to stab another inmate.  Later that year, Andrade participated in a coordinated attack on guards by 25 inmates.  During the ensuing riot, Andrade and other inmates prevented a security gate from closing so more inmates could

join the attack. A hearing officer found Andrade guilty of participating in the riot. In 2012, Andrade participated in another violent riot.

Andrade's juvenile criminal history includes joyriding (§ 499) and stealing beer from a store (§ 459) at age 14; vehicle theft (Veh. Code, § 10851) at age 15; possessing a concealed knife (§ 594, subd. (b)(2)), vandalism (§ 594), and burglary (§ 459) at age 16. The vandalism petition arose from an incident in which Andrade attacked a parked car, with a mother and three young children inside, at a gas station. Andrade kicked and dented the driver's door, hit the hood, and yelled, "Move your car bitch or I'll kill your kids." Andrade opened a passenger door where the woman's nine-year-old boy was sitting and yelled, "You hear me, I'll kill your fucking kids." He tried to kick the boy, but missed when the boy moved. Andrade escaped from juvenile facilities twice that same year. (Welf. & Inst. Code, § 871.)

Andrade testified that he committed the vehicle theft because he was drunk and his prior offenses were all alcohol related. He participated in "NA and AA for like six months" in 17 years of continuous confinement. He did not participate in educational classes. He said facility lockdowns sometimes prevented him from attending. He did not express any need for substance abuse treatment. He said, "The first couple of years in prison I did drink, but I just got tired of it and I didn't drink no more." He said he contacted the residential treatment program because he "needed somewhere to go." He said if he were released, he would "just try to stay--I do--stay away from trouble." He said it is hard to stay out of trouble in prison. He heard from county jail inmates that there is work available on the oil platforms.

The representative of the residential program testified that he would accept Andrade. The representative met with Andrade twice for a total of about one and a half hours and he found him to be sincere.

The trial court issued a written decision in which it weighed the evidence on each suitability factor and concluded that resentencing Andrade would pose an unreasonable risk of danger to the public, based primarily upon his criminal history, his

consistent pattern of violent behavior in prison, and the absence of a viable plan for addressing his problem with substance abuse.

## DISCUSSION

Under the three strikes law as it existed before Proposition 36, a defendant convicted of two prior serious or violent felonies was subject to a sentence of 25 years to life upon conviction of any third felony. The Act reduces punishment for certain nonviolent third-strike offenders. Prisoners such as Andrade, who are currently serving an indeterminate sentence for a third felony conviction which was not a serious or violent felony, may seek resentencing as a second strike offender to a determinate term. (§ 1170.126.)

Upon such petition, the trial court determines whether the inmate is eligible to be considered for resentencing. It is undisputed that Andrade is eligible. When a petitioner is eligible, the trial court must decide whether resentencing the petitioner poses an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).)

The petitioner "shall be" resentenced as a second striker "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising its discretion, the trial court may consider "the petitioner's criminal conviction history . . . ; [¶] . . . disciplinary record . . . ; and [¶] [a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.*, subd. (g)(1)-( 3).) The trial court's discretion to resentence under section 1170.126 is akin to other sentencing decisions. A trial court has "discretion to make numerous other sentencing choices, such as whether to grant or deny probation, impose consecutive sentences, or strike the punishment for an enhancement." (*People v. Sandoval* (2007) 41 Cal.4th 825, 850.) An appellant who attempts to show abuse of such discretion bears a heavy burden to show the court's decision was arbitrary, capricious or exceeded the bounds of reason. (*People v. Welch* (1993) 5 Cal.4th 228, 234 [decision whether to grant probation].)

5

The trial court exercised its discretion not to resentence Andrade in the manner prescribed by section 1170.126 as demonstrated by its thorough written decision in which it discusses and weighs the evidence on each factor. The People met their burden to convince the trial court of the facts upon which it relied by a preponderance of the evidence. (Evid. Code, § 115.)

Andrade contends that the factors set forth in section 1170.126 for determining unreasonable risk of danger are unduly vague and should be interpreted to include the more particularized standards that govern *Romero* motions and parole suitability determinations. Whether or not these standards apply to Andrade's resentencing petition, they are satisfied. In determining whether to strike a prior strike in the interests of justice because the defendant is outside the spirit of the three strikes law, courts must consider the defendant's present and prior serious or violent felonies, background, character, and prospects. (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 161.) Andrade's background, character, and prospects offer little hope for reform. In deciding that an inmate is not suitable for parole because he or she poses an unreasonable danger to the public, courts must rely on some evidence of current dangerousness; must consider the inmate's entire record including his or her criminal record, history of violence, social history, psychological factors, prison behavior, signs of remorse, motive for crimes, age, health, and plans for the future; and may not place unlimited reliance upon immutable historic facts such as the nature of the commitment offense. (§ 3041; Cal. Code Regs., tit. 15, § 2402, subds. (c) & (d); *In re Lawrence* (2008) 44 Cal.4th 1181, 1191.) The record includes reliable, credible evidence of Andrade's current dangerousness as recently as 2012 when he participated in a prison riot. His testimony disclosed that he does not take responsibility for his continuing violent conduct. The trial court considered Andrade's entire record and did not rely solely on the nature of the commitment offense.

Andrade forfeited his contention that his federal bank robbery convictions could not qualify as strikes because he did not raise that issue in either of his two appeals from the underlying judgment. (See *Andrade I* and *Andrade II*.) Moreover, although

6

federal bank robbery can be committed without use of force, violence, or intimidation (18 U.S.C. § 2113(a); 1170.12, subd. (b)(2); see *People v. Jones* (1999) 75 Cal.App.4th 616, 634-635), Andrade pled guilty to robbing the tellers "by force, violence, and intimidation."

Andrade points out that he has not committed murder or rape and that his commitment offense was a "wobbler." (§ 17, subd. (b)(1); Veh. Code, § 10851, subd. (a).) But these are not overwhelming factors in his favor. Andrade committed vehicle theft in a dangerous and felonious manner. The record supports the trial court's finding that the offense "demonstrated a complete disregard for the safety of others." Andrade's subsequent institutional behavior demonstrates his continuing dangerousness.

Whether Andrade poses an "unreasonable risk of danger to public safety" is not a fact that must be pled and proved to a jury beyond a reasonable doubt. (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1305.) Any fact that increases the penalty for a crime beyond the statutory maximum must be proved to a jury beyond a reasonable doubt in order to satisfy the Sixth Amendment right to a jury trial. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; *Alleyne v. U.S.* (2013) __ U.S. __ [133 S.Ct. 2151].) But this constraint applies only to a fact that is "legally essential to the punishment." (*Blakely v. Washington* (2004) 542 U.S. 296, 313.) It does not apply to a proceeding in which a trial court may, in its discretion, modify downward a properly imposed sentence. (*Dillon v. U.S.* (2010) 560 U.S. 817, 828-829; *Kaulick*, at p. 1304; *see People v. Osuna* (2014) 225 Cal.App.4th 1020, 1038 [decision whether a petitioner was armed with a firearm during the current offense and is therefore ineligible for resentencing under section 1170.126, subdivision (e) does not implicate Sixth Amendment rights]; accord *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063.) The resentencing provision does not create a new statutory maximum sentence. (*Kaulick*, at p. 1303.)

Andrade is serving a lawful statutory sentence of 25 years to life based on facts he either admitted or were proven to a jury beyond a reasonable doubt. The resentencing provision of the Act is an act of lenity on the part of the electorate and does

7

not implicate Sixth Amendment concerns. (*People v. Superior Court* (*Kaulick)*, *supra*, 215 Cal.App.4th at pp. 1304-1305.)

The more restrictive definition of "unreasonable risk of danger to public safety," recently enacted by the voters in Proposition 47, "the Safe Neighborhoods and Schools Act," does not apply to Andrade's resentencing. (§ 1170.18, subd. (c).) Section 1170.18 defines "unreasonable risk of danger to public safety" to mean "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." These "super-strike" offenses are sexually violent offenses, certain sex crimes that involve a child, any homicide or attempted homicide, solicitation to commit murder, assault with a machine gun upon a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony that is punishable by life in prison or death. (§ 667, subd. (e)(2)(C)(iv)(I)-(VIII).) We do not decide whether this definition applies to the Three Strikes Reform Act, because Proposition 47 succeeded Andrade's petition and is not retroactive. Proposition 47 does not contain an express declaration of retroactivity and it is not clear from its history that the voters intended it to be retroactive. (§ 3, *People v. Brown* (2012) 54 Cal.4th 314, 324.) The new definition is not retroactive under the *Estrada* rule because it does not reduce punishment for a particular crime. (*In re Estrada* (1965) 63 Cal.2d 740, 745.) Moreover, Andrade poses an unreasonable risk of attempting or committing a homicide. (§ 667, subd. (e)(2)(C)(iv)(IV).)

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

8

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Mark E. Weber, Deputy Attorney General, for Plaintiff and Respondent.