Filed 6/8/22  P. v. Maynor CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>GLEN EDWARD MAYNOR,<br><br>     Defendant and Appellant. | F080890<br><br>(Super. Ct. No. BF172693C)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Glen Edward Maynor and his codefendants, Trichelle K. Burton and Tyquan Maurice Jones, of conspiracy to commit robbery (Pen. Code,[1] §§ 182, subd. (a)(1), 212.5, subd. (c)), carjacking (§ 215 subd. (a)), assault (§ 243, subd. (a)), attempted kidnapping to commit robbery (§§ 664, 209, subd. (b)), and attempted robbery (§§ 664, 212.5, subd. (c)).  In addition, the trial court found Maynor had suffered two prior strikes within the meaning of the Three Strikes law.  (§§ 667, subds. (b)-(i) and 1170.12, subds. (a)-(d)).  He was sentenced to an aggregate prison term of 54 years to life.

Maynor raises the following claims on appeal:  (1) there is insufficient evidence to support his conviction for attempted kidnapping to commit robbery; (2) his conviction for attempted robbery must be reversed because attempted robbery is a necessarily included offense of attempted kidnapping to commit robbery; and (3) he is entitled to an opportunity to request a hearing on his ability to pay court-imposed fines and fees.

At our request, the parties submitted briefing regarding whether Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill No. 518), which became effective on January 1, 2022, retroactively applies to Maynor's case and requires resentencing.  The parties agree that Assembly Bill No. 518 retroactively applies to Maynor's judgment of conviction, which is not yet final, but disagree as to the necessity of remand.  We conclude that remand for reconsideration of Maynor's sentence would be futile.  Finding no merit to Maynor's claims, we affirm the judgment of conviction.

## PROCEDURAL HISTORY

On August 8, 2019, the Kern County District Attorney's Office filed an amended information charging Maynor and his two codefendants, Tyquan Maurice Jones and Trichelle K. Burton, with six crimes involving three victims.  As to victim K.A., Maynor

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

and his codefendants were charged with conspiracy to commit robbery (§§ 182, subd. (a)(1), 212.5, subd. (c); count 1). As to victim J.S., they were charged with carjacking (§ 215, subd. (a); count 2) and assault by means likely to cause great bodily injury (§ 245, subd. (a)(4); count 3). And finally, with respect to victim O.E., they were charged with conspiracy to commit kidnapping for robbery (§§ 182, subd. (a)(1), 209, subd. (b); count 4), attempted kidnapping for robbery (§§ 664, 209, subd. (b); count 5), and attempted robbery (§§ 664, 212.5, subd. (c); count 6). The information alleged Maynor had suffered three prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e)) and three prior serious felony convictions (§ 667, subd. (a)).

On September 9, 2019, the jury found Maynor and his codefendants guilty on counts 1, 2, 5, and 6 and found him not guilty of count 4. On count 3, it found Maynor and his codefendants guilty of the lesser included offense of simple assault.

After the People dismissed one prior strike allegation and all three prior serious felony conviction enhancement allegations, the trial court found true the remaining two strike allegations.

On February 21, 2020, the trial court sentenced Maynor to state prison for 27 years to life on count 5 and a consecutive term of 27 years to life on count 2. The court imposed, but stayed, terms of 25 years to life for count 1, 25 years to life for count 6, and 120 days in county jail for count 3. The court also imposed restitution and parole fines and various other assessments. Maynor's aggregate prison term is 54 years to life.

On March 2, 2020, Maynor filed a timely notice of appeal.

## STATEMENT OF FACTS

### June 6, 2018-Conspiracy to Commit Robbery (Count 1)

On June 6, 2018, K.A. drove to Fresno to pick up "Melody," whom he had known for a couple of years. K.A. also knew Melody as Trichelle.

K.A. had allowed Melody to use his ATM card on prior occasions, and Melody had K.A.'s personal identification number (PIN) to the card, which was her date of birth.

At approximately 9:30 p.m., K.A. arrived at an apartment complex, as Melody had directed him. After five or 10 minutes, two men approached K.A. and asked him for a cigarette. K.A. replied that he did not have one and the men began to walk away. They came back a few minutes later.

The men jumped K.A., hitting him repeatedly and tasing him. K.A. yelled out, "I don't have no money …. What are you trying to do?" K.A. dropped his wallet and phone on the ground and the men stopped hitting him. They picked up the wallet and phone and fled. A few hours after the robbery, money was withdrawn from K.A.'s bank account.

Fresno Police Officer James Hannah responded to the incident. K.A. told Hannah that he was supposed to meet his girlfriend, Trichelle Burton, at the apartment complex where he had been attacked.

### June 13, 2018-Carjacking (Count 2) & Assault (Count 3)

On June 13, 2018, J.S. went to a Motel 6 in Fresno to meet "Leah," a woman he had met on an online dating website. Leah had contacted J.S. seeking a friend with benefits relationship. Over the course of several hours, they exchanged messages. They arranged to meet at Leah's motel room for dinner and a movie.

At approximately 9:45 p.m., J.S. arrived at Leah's room. He immediately told her he was not interested because she looked too young. The television was on and the volume was blaring. J.S. felt uneasy. He got up to turn down the volume on the television.

A man came out of the bathroom and knocked J.S. over the bed. As J.S. got up, another man emerged from the bathroom and begun to attack him. J.S. yelled for help. The two men ripped off his clothes and tased J.S. repeatedly.

J.S. made it to the door as Leah yelled, " 'get him, don't let him get away.' " The men continued to beat J.S. One of the men held J.S. in a chokehold while the other punched him in the face and tasered him. J.S.'s assailants eventually drug J.S., naked, underneath a sink in the room and held a knife to his throat.

Leah took J.S.'s phone, ATM, and car keys, and told him, " 'It's either your car or your life.' " Leah instructed one of the men to hold J.S. down and keep the knife to his throat.

With the knife still pressed against his throat, J.S. gave Leah the PIN to his ATM card. Leah left for approximately five minutes while the two men continued to detain J.S. When Leah returned, the group left. They told J.S. that if he left, their cousin, who was next door, would tell them and they would return. J.S. remained in the room for another minute, grabbed a towel, and ran into the front office of the motel.

J.S.'s vehicle had been taken. Later, J.S. observed that money had been withdrawn from his bank account.

Several days after the incident, J.S. identified Burton as "Leah," and Jones and Maynor as the two men who had attacked him, in a photographic lineup. At trial, J.S. identified Burton, Jones, and Maynor as the group that had attacked him.

### *June 15, 2018-Attempted Kidnapping to Commit Robbery (Count 5) & Attempted Robbery (Count 6)*

On June 15, 2018, at approximately 2:00 p.m., O.E. was leaving work for the day when she observed a white car parked next to her car in the parking lot of her place of employment. O.E. was carrying her purse over her shoulder and she had her cell phone in her hand.

Suddenly, a man emerged from the back seat of the white car and began hitting her with a closed fist. O.E. screamed and fell to the ground. Half of her body was against the car, and the other half was on the ground.

As the man attempted to lift O.E., he told her to "get in the car." O.E. could see two other people inside the white car, a male who was seated in the driver's seat, and a female, seated in the front passenger's seat.

The male and female emerged from the white car. The female told O.E.'s assailant to "get her in the car."

Several bystanders began to approach and the man attempting to lift O.E. jumped off of her. The bystanders asked the group what was going on. The female told the bystanders O.E. "was trying to beat her up."

O.E. walked over to the witnesses. O.E.'s assailant and his companions fled in the white car, which was subsequently identified as the vehicle stolen from J.S. Neither O.E.'s purse nor her phone were taken during the attack.

### Police Questioning

On June 18, 2018, Fresno Police Detective Mikal Clement questioned Burton. Burton admitted that when she contacted K.A., she had planned to jump him and take his ATM card, and that she had withdrawn $200 from his bank account. As to the robbery of J.S., Burton admitted taking his white Camry and using a taser on J.S. Burton also admitted to withdrawing money from J.S.'s bank account using his ATM card.

When Clement questioned Maynor, Maynor admitted that he had "rushed" K.A. when K.A.'s back was turned. Maynor also admitted to taking J.S.'s wallet during the Motel 6 robbery.

## ANALYSIS

### I. Evidence Supporting Attempted Kidnapping for Robbery Conviction

Maynor contends there is insufficient evidence to support his conviction for attempted kidnapping for robbery. We conclude the record contains substantial evidence to support his conviction.

6.

## A. *Relevant Legal Principles*

On appeal, the court must view the evidence in the light most favorable to the judgment below, indulging in all presumptions and every logical inference the trier of fact could draw from the evidence. (*People v. Carter* (2005) 36 Cal.4th 1114, 1156; *People v. Maury* (2003) 30 Cal.4th 342, 396.) The test is whether substantial evidence supports the jury's conclusion (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578), not whether the reviewing court would reach the same conclusion. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.)

Reversal is not warranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' " (*People v. Panah* (2005) 35 Cal.4th 395, 489; *People v. Scott* (1978) 21 Cal.3d 284, 296.)

If the verdict is supported by substantial evidence, the appellate court must accord due deference to the trier of fact and not substitute their evaluations of a witness's credibility for that of the fact finder. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) Because an appellate court must "give due deference to the trier of fact and not retry the case ourselves," an appellant challenging the sufficiency of the evidence "bears an enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

Here, Maynor and his codefendants were convicted of attempting kidnapping to commit robbery. Kidnapping to commit robbery requires proof that the movement of the victim "is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in," the underlying robbery. (§ 209, subd. (b)(2).)

A conviction for attempted kidnapping to commit robbery requires proof "the defendant had the specific intent required for kidnapping to commit robbery and that the

7.

movement, *if completed as the defendant intended*, would have been more than merely incidental to the underlying crime of robbery and would have … increased the risk of harm over and above that necessarily present in the robbery." (*People v. Mullins* (1992) 6 Cal.App.4th 1216, 1221 (*Mullins*), italics added; *People v. Robertson* (2012) 208 Cal.App.4th 965, 979 ["section 209, subdivision (b)(2) does not require the People to prove that this movement *substantially* increased the risk of harm"].)

For a completed kidnapping, the victim's movement must be substantial. (*People v. Cole* (1985) 165 Cal.App.3d 41, 50.)  However, for *attempted* kidnapping, the distance the victim was moved "is immaterial." (*Ibid.*)  "[A]sportation simply is not an element of the offense." (*Ibid.*)  A conviction for attempted kidnapping to commit robbery is therefore proper where the defendant's "intent was to move [the victim] much farther and that [the defendant] was prevented from doing so only by [the victim's] successful escape." (*Mullins, supra,* 6 Cal.App.4th at pp. 1220-1221.)

### B. Analysis

The record leaves no doubt that Maynor's crimes failed to meet the requirements of an aggravated kidnapping.  Although Mayor and his accomplices intended to force O.E. in their car, that did not happen.  Consequently, there was no substantial movement of the victim.  However, Mayor's conviction is for *attempted* aggravated kidnapping. And, to that end, we conclude there is sufficient evidence upon this record to support his conviction.

Here, the record supports the conclusion that Maynor's intended movement of the victim was beyond that merely incidental to the intended crime of robbery.  (§ 209, subd. (b)(2).)  O.E. testified that her purse and her cell phone—which were in plain view— were not taken during the attack and that Maynor told her to "get in the car."  Burton also instructed Maynor to "get [O.E.] into the car," before bystanders interceded.  Had Maynor intended to simply take O.E.'s purse and cell phone, he could have done so without forcing her into the backseat of his vehicle.  Any movement of O.E. into the

vehicle was therefore unnecessary to accomplish the robbery. Consequently, movement of O.E. into the vehicle, or further, was not merely incidental to the robbery. (*People v. James* (2007) 148 Cal.App.4th 446, 455, fn. 6 ["movement unnecessary to a robbery is not incidental to it at all"].)

Further, Maynor's intended movement of the victim, if accomplished, would have increased the risk of harm to her above that necessarily attendant to the intended robbery. (§ 209, subd. (b)(2).) We find *People v. Jones* (1999) 75 Cal.App.4th 616 (*Jones*) instructive.

In *Jones*, the victim, who had just stepped out of her car in a school parking lot, was seized by the defendant and forcibly moved 25 to 40 feet back to her car, where he made her open the door and get back in. The victim said, " '[p]lease don't hurt me, just take everything.' " The defendant replied, " ' "I plan on it." ' " (*Jones, supra,* 75 Cal.App.4th 616, 622.)

As the defendant entered the car to rob the victim, she escaped. (*Jones, supra,* 75 Cal.App.4th at p. 622.) The appellate court affirmed the defendant's conviction for kidnapping to commit robbery. The court explained: "The critical factor which substantially increased the risk of harm to [the victim] occurred when he forced her to move the 40 feet in order to then push her into her car. Although the car alarm was sounding, once he pushed her into the car, she was no longer in public view as when she was in plain sight with [the defendant] holding his hand over her mouth—a situation which would have aroused concern immediately in any onlookers." (*Id*. at pp. 629-630.)

Here, had Maynor successfully forced O.E. into his car, as he intended, she would have been obfuscated from public view, at least partially. Once in the vehicle, it would have been three against one, which not only would have reduced O.E.'s chance of escape, it would have enhanced the opportunity for Maynor, Jones, and Burton to have committed additional crimes against O.E., increasing the risk of physical or emotional harm to her. (*People v. Leavel* (2012) 203 Cal.App.4th 823, 834, citing *People v. Power*

9.

(2008) 159 Cal.App.4th 126, 139 [increased risk of harm includes physical or "mental, emotional, or psychological harm"]; accord, *People v. Nguyen* (2000) 22 Cal.4th 872, 874.)

This seemingly insubstantial distance would likely have satisfied the asportation requirement to support a conviction for a completed kidnapping to commit robbery. We therefore have no doubt that the evidence adduced at trial supports Maynor's conviction for attempted kidnapping for robbery. Had Maynor moved O.E. as he had intended, the movement "would have … increased the risk of harm over and above that necessarily present in the robbery." (*Mullins, supra*, 6 Cal.App.4th at p. 1221.)

The record did not foreclose the jury from further concluding that Maynor and his accomplices intended to move O.E. further than to the backseat of their vehicle. From the evidence adduced at trial, including the robberies of K.A. and J.S., the jury could reasonably conclude the group had intended to obtain O.E.'s ATM card and PIN to withdraw money from her bank account. However, unlike the attacks on K.A. and J.S., the attack on O.E. occurred in broad daylight with bystanders approaching. It is therefore reasonable to conclude that Jones and his accomplices sought to get O.E. inside their vehicle to transport O.E. to another more secluded location to accomplish their objective.

Maynor asserts that because there was no asportation of the victim at all, the jury could only speculate as to whether he intended to rob O.E. in the backseat of his vehicle, or to drive her away to another location. This distinction is without a difference. At a minimum, Maynor and his accomplices intended to move O.E. into the backseat of their vehicle. This movement alone would likely have satisfied the asportation element required for a completed kidnapping to commit robbery. Assuming otherwise however, the jury could also reasonably conclude, without speculating, that Maynor and his accomplices intended to drive O.E. to another location. Maynor's assertion to the contrary is unpersuasive.

Maynor directs this court to *Mullins*, *supra*, 6 Cal.App.4th 1216 to support his assertion that there is insufficient evidence showing he intended to move O.E. in a manner that was more than merely incidental to the intended robbery, and which would have "substantially" increased the risk of harm to O.E. Maynor's reliance upon *Mullins* does not assist him.

In *Mullins*, the victim was moved a distance of 150 feet, while inside of a moving vehicle traveling through a parking lot, before she escaped. (*Mullins*, *supra*, 6 Cal.App.4th at p. 1218.) The trial court concluded the evidence demonstrated the movement of the victim was not a "substantial distance," and found the defendant guilty of the lesser included offense of attempted kidnapping. (*Id*. at pp. 1221-1222.) On appeal, the court affirmed the defendant's conviction for attempted kidnapping.

The appellate court stated it might have come to a different conclusion if it had been the fact finder, suggesting the movement of the victim, although short, might have been enough to constitute a completed kidnapping rather than an attempted kidnapping. (*Mullins*, *supra*, 6 Cal.App.4th at p. 1220.) However, the court acknowledged it was bound by the trial court's finding of fact. (*Ibid*.)

Nothing within *Mullins* suggests that the intended movement of the victim here was insufficient to support Maynor's conviction for attempted kidnapping to commit robbery. Maynor directs us to the following two-part test articulated in *Mullins*: "To convict, the fact finder must find beyond a reasonable doubt that the defendant had the specific intent required for kidnapping to commit robbery and that the movement, if completed as the defendant intended, would have been more than merely incidental to the underlying crime of robbery and would have *substantially* increased the risk of harm over and above that necessarily present in the robbery." (*Mullins*, *supra*, 6 Cal.App.4th at p. 1221, italics added.)

*Mullins* was decided in 1992, before the Legislature amended section 209 to eliminate the requirement that the prosecution prove that movement of the victim

11.

"substantially" increased the risk of harm to the victim. (See *People v. Robertson, supra,* 208 Cal.App.4th at p. 978.) For an attempted aggravated kidnapping, the relevant inquiry is whether the intended movement of the victim is more than merely incidental to the intended crime, and whether it would have increased the risk of harm to the victim above that inherent in the intended crime itself. (§ 209, subd. (b)(2).) As discussed, the record amply supports the conclusion that Maynor's intended movement of O.E. was more than incidental to the intended robbery and would have increased the risk of harm to her.

## II. Attempted Robbery Conviction

### A. *Background*

Maynor was convicted of attempted kidnapping to commit robbery (§§ 664/209, subd. (b), count 5), and attempted robbery (§§ 664/212.5, subd. (c), count 6). He contends that his conviction for attempted kidnapping in count 6 is a necessarily included offense of his conviction for attempted kidnapping for robbery in count 5, and that his conviction on count 6 must therefore be vacated. His assertion is unpersuasive.

### B. *Analysis*

A defendant "cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act." (*People v. Sanchez* (2001) 24 Cal.4th 983, 987; *People v. Pearson* (1986) 42 Cal.3d 351, 355 ["[M]ultiple convictions may not be based on necessarily included offenses."], overruled on other grounds by *People v. Vidana* (2016) 1 Cal.5th 632, 650-651.) "An offense is necessarily included within another if 'the statutory elements of the greater offense ... include all the elements of the lesser offense....' " (*People v. Lewis* (2008) 43 Cal.4th 415, 518, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919, 920.)

Robbery (§ 211) is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." An attempted robbery consists of two

elements: (1) specific intent to rob; and (2) a direct, unequivocal, but ineffectual overt act towards the commission of the intended robbery. (*People v. Dillon* (1983) 34 Cal.3d 441, 454-455; *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 861.)

Kidnapping for robbery (§ 209, subd. (b)(1)) consists of six elements: (1) the defendant intended to commit robbery; (2) acting with that intent, the defendant detained another person by using force or instilling a reasonable fear; (3) using that force or fear, the defendant moved or made the other person move a substantial distance; (4) the other person was moved or made to move a distance beyond that merely incidental to the commission of the robbery; (5) the defendant intended to commit robbery when the movement began; and (6) the other person did not consent to the movement. (CALCRIM No. 1203.)

An attempted kidnapping for robbery (§§ 664, 209, subd. (b)(1)) requires proof of two elements in addition to the six elements the prosecution must prove to establish kidnapping for robbery: (7) the defendant intended to commit kidnapping for robbery; and (8) a direct, unequivocal, but ineffectual overt act towards the commission of the intended kidnapping for robbery. (CALCRIM No. 460.)

Our Supreme Court has held that for purposes of the rule barring conviction on necessarily included lesser offenses, robbery is not a lesser included offense of kidnapping for robbery because kidnapping for robbery does not require a completed robbery. (*People v. Lewis*, *supra*, 43 Cal.4th at pp. 518-519; *People v. Davis* (2005) 36 Cal.4th 510, 565.) Applying the elements test, and consistent with our Supreme Court's holding, we conclude attempted robbery is not a lesser offense necessarily included in attempted kidnapping for robbery.

Attempted robbery is not a lesser offense necessarily included in attempted kidnapping for robbery because one of the elements of attempted robbery—a direct, unequivocal, but ineffectual overt act towards the commission of the *intended robbery* (*People v. Dillon, supra*, 34 Cal.3d at pp. 455-456)—is not one of the elements of

13.

attempted kidnapping for robbery. (See *People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) A perpetrator could possess the specific intent to commit a kidnapping for robbery and to commit robbery; take a direct but ineffectual step towards committing the kidnapping for robbery; but without taking a direct but ineffectual step towards committing the robbery. Therefore, under the elements test, the elements of attempted robbery are not necessarily included in the elements of the crime of kidnapping for robbery. (*Id.* at p. 1034 ["if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former"].)

Maynor contends the facts of the instant case are illustrative of the fact that in committing an attempted kidnapping for robbery, he also committed an attempted robbery. However, in determining whether one offense is necessarily included within another, we "do not consider the underlying facts of the case or the language of the accusatory pleading." (*People v. Sanders* (2012) 55 Cal.4th 731, 739.) The inquiry is whether a person could have theoretically committed the greater offense without committing the lesser offense. As discussed, we conclude it is possible.

### III. Assembly Bill No. 518

Pursuant to section 654, if a single action or course of conduct by a defendant violates multiple laws, "the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) At the time of Maynor's sentencing hearing, the law required trial courts to impose sentence "under the provision that provides for the longest potential term of imprisonment." (Former § 654, subd. (a).) Effective January 1, 2022, however, the Legislature vested trial courts with new discretion, where "[a]n act or omission that is punishable in different ways by different provisions," to impose punishment under any of those provisions. (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.)

14.

We requested supplemental briefing from the parties as to whether newly enacted Assembly Bill No. 518 applies retroactively to Maynor's case. The parties agree that Assembly Bill No. 518 applies retroactively to Maynor's case, which has not yet reached finality. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 309.) However, the parties disagree as to the necessity of remand. The Attorney General contends remand would be futile in light of comments made by the court during Maynor's sentencing hearing. For the reasons discussed below, we agree that remand for reconsideration of Maynor's sentence would be futile.

## A. Background

Maynor, a third-strike offender, was sentenced to 27 years to life on count 5 (attempted kidnapping for the purposes of robbery) and a consecutive term of 27 years to life on count 2 (carjacking). Pursuant to section 654, the trial court imposed stayed terms of 25 years to life on count 1 (conspiracy to commit robbery), 25 years to life on count 6 (attempted robbery), and 120 days in county jail for count 3 (misdemeanor assault). During sentencing, the trial court made the following statements:

> "[T]here really is not discretion as to what the sentence should be. To the extent that there, at some point in the future might be discretion, I do believe that the sentence is appropriate.
> "This is a sequence of behavior by Mr. Maynor. It is not a one-off incident. So to the extent that any appellate court is reviewing this in the future wondering did the judge exercise the judge's discretion, yes."

## B. Relevant Legal Principles

Remand is necessary when the record shows the trial court proceeded with sentencing on the erroneous assumption that it lacked discretion. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) However, if the record shows the sentencing court " ' "would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' " (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

15.

*People v. Gutierrez* (1996) 48 Cal.App.4th 1894 (*Gutierrez*) is instructive. In *Gutierrez*, the court addressed whether remand for resentencing was required following *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. In *Romero*, our Supreme Court determined that trial courts have the discretion to strike Three Strikes prior convictions in the furtherance of justice. (*Id.* at p. 530.)

The *Gutierrez* court concluded that based upon comments made by the sentencing court and the sentence imposed, remanding for resentencing would serve no practical purpose. (*Gutierrez, supra,* 48 Cal.App.4th at p. 1896.) Specifically, the court observed that the defendant " 'clearly engaged in a pattern of violent conduct, which indicates he is a serious danger to society.' " (*Ibid*.) The court imposed the aggravated term for the principal count, a consecutive term, a five-year enhancement under section 667, subdivision (a), and though it had discretion to strike two 1-year section 667.5, subdivision (b) enhancements, it imposed the enhancements. (*Gutierrez, supra,* at p. 1896.) In imposing the section 667.5, subdivision (b) enhancements, the court stated, " 'this is a situation where I do agree with [the prosecutor], there really isn't any good cause to strike it. There are a lot of reasons not to, and this is the kind of individual the law was intended to keep off the street as long as possible.' " (*Gutierrez, supra,* at p. 1896.) Under the circumstances, the *Gutierrez* court held that remand for reconsideration would serve no purpose. (*Ibid*.)

### C. Analysis

In the case at bench, the record strongly suggests that remand for reconsideration of Maynor's sentence in light of newly enacted Assembly Bill No. 518 would be futile. Not only did the trial court refuse to strike Maynor's prior strike convictions, it imposed consecutive sentences on counts 5 and 2, resulting in an aggregate prison term of 54 years to life. Although the court had little sentencing discretion based upon the law at the time of Maynor's sentencing hearing, the court made comments suggesting that it would not reduce Maynor's sentence if it could. The court specifically stated, "there really is not

16.

discretion as to what the sentence should be. To the extent that there, at some point in the future might be discretion, I do believe that the sentence is appropriate."

Here, as in *Gutierrez*, the sentencing court's comments leave no doubt that remand for reconsideration of Maynor's sentence would yield the same result. Under the circumstances, remand would constitute an idle act. The law does not require the performance of idle acts. (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 48.)

## IV. Ability to Pay Hearing

On February 21, 2020, the court held Maynor's sentencing hearing. At the hearing, the court imposed certain fines, fees, and assessments, including: a restitution fine of $300 (§ 1202.4); a stayed $300 parole revocation fine (§ 1202.45); $160 in court security fees (§ 1465.8); and a $120 conviction assessment (Gov. Code, § 70373). Maynor contends the trial court erred by imposing these fines and fees without first determining whether he had the ability to pay them. We conclude he has forfeited his claim by failing to object or otherwise timely raise the issue below.

Maynor was sentenced over a year after the Court of Appeal issued its decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Although forfeited, he requests this court exercise its discretion to reach the merits of his claim. We decline to do so. The " 'discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.) Here, Maynor had ample notice prior to sentencing of *Dueñas* on which he now relies to advance his constitutional claim. Under the circumstances, we decline to depart from the rule of forfeiture.

Maynor further contends that even if his due process claim has been forfeited, his Eighth Amendment claim has not been because his sentencing hearing occurred before the first published case was filed addressing a similar claim. (See *People v. Cowan* (2020) 47 Cal.App.5th 32, review granted June 17, 2020, S261952.) As Maynor failed to

object to imposition of the challenged fines and fees or request an ability to pay hearing upon any grounds, we find his argument is unavailing. The claim is deemed forfeited. (See *People v. Torres* (2019) 39 Cal.App.5th 849, 860 & fn. 4 [excessive fines claim forfeited in absence of timely objection]; see also *People v. Baker* (2018) 20 Cal.App.5th 711, 720 [Eighth Amendment claim forfeited for failure to raise it below].)

## **DISPOSITION**

The judgment of conviction is affirmed.

SMITH, J.

WE CONCUR:


DETJEN, Acting P. J.


SNAUFFER, J.

18.