Filed 2/3/26  P. v. Brown CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B337987 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA088181) |
| v. | |
| DERRICK LAMONT BROWN, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Joseph L. Burghardt, Judge.  Affirmed in part and remanded with directions.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jonathan J. Kline and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Derrick Lamont Brown challenges several aspects of his resentencing. For several robbery convictions, the superior court originally sentenced Brown, in 2015, to a prison term of 30 years, four months. That sentence included four, one-year enhancements for prior prison terms under Penal Code section 667.5, subdivision (b) (further statutory references are to the Penal Code unless specified). Years later, the Legislature enacted section 1172.5, which not only invalidates such enhancements, but requires a full resentencing of individuals whose sentences include them – a resentencing at which the court applies other intervening ameliorative changes to the law. (§ 1172.5, subds. (a) & (b).) When resentencing Brown, the court struck the four invalid one-year enhancements without further reducing Brown's term of confinement. Brown disputes the court's retention of a five-year prior serious felony enhancement, its reapplication of the "Three Strikes" law, and its reimposition of an upper term on the principal offense. We affirm the court's new sentence of 26 years, four months; however, we order a limited remand regarding certain fines and assessments.

## BACKGROUND

### A. Original Trial and Sentencing

Brown attached the record of his original trial and sentencing to an unopposed motion for judicial notice, dated August 20, 2025, which we grant.

In 2015, a jury convicted Brown of one count of attempted second-degree robbery (§§ 664, 211; count 1) and six counts of second-degree robbery (§ 211; counts 2 through 7). In a separate trial phase for which Brown waived a jury, the superior court found Brown had suffered six prior adjudications that could potentially increase his sentence under the Three Strikes law

2

(see §§ 1170.12, 667) or other anti-recidivism statutes. These included one juvenile robbery adjudication from a 1982 proceeding, two convictions for robbery (see § 211) and two convictions for assault with a firearm (see § 245, subd. (a)(2)) from a 1987 prosecution, and one "bank robbery" conviction from a 1998 federal prosecution (see 18 U.S.C. § 2113(a)).

At sentencing, the superior court first addressed Brown's prior adjudications. For purposes of the anti-recidivism statutes, it struck the juvenile adjudication, because it appeared possible Brown was only 15 years old at the time. The court also struck the federal "bank robbery" conviction. It was unsure whether the conviction was under the prong of the federal bank robbery statute corresponding with a robbery under California law (which would make it a strike) or under the prong punishing burglary of a bank – that is, entering a bank with the intent to commit any felony affecting the bank (which would not). (See *People v. Jones* (1999) 75 Cal.App.4th 616.) As to the remaining four convictions from the 1987 case, the court chose to treat them as a single offense. It viewed them as representing "a single period of aberrant behavior." Thus, it would use just one of the 1987 robbery convictions as a strike under the Three Strikes law. And, similarly, it would impose only one five-year enhancement for the prior commission of a serious felony, staying enhancements related other priors. (See §§ 654, 667, subd. (a).)

The superior court then chose one of the six robbery counts in the prosecution before it, count 7, as the principal sentencing offense. It noted Brown "exploited his own son in committing this crime" and noted the "prior conduct that is not being treated as strikes . . . is nevertheless serious." The court imposed the upper term for the offense, five years, which it doubled to 10 years

3

under the Three Strikes law because of Brown's prior strike. On the subsidiary offenses, the court imposed consecutive terms of one-third of the applicable middle term for each offense, doubled under the Three Strikes law. Thus, the court imposed one year, four months for the attempted robbery charged in count 1 and two years for each of the robberies charged in counts 2 through 7. To these 21 years, four months, the court added the five-year enhancement for a prior serious felony. And the court added four, one-year enhancements for prior prison terms. (See § 667.5, subd. (b).) Those were based on Brown having served prior prison terms for an attempted robbery conviction, a conviction of a cocaine-related offense (see Health & Saf. Code, § 11351.5), a conviction for a weapons-related offense (§ 12020), and the federal bank robbery conviction.

In addition to this aggregate term of 30 years, four months, the superior court ordered Brown to pay $9,009.66 in restitution to Chase Bank pursuant to section 1202.4, subdivision (f); a $9,000 restitution fine pursuant to section 1202.4, subdivision (b); a $9,000 probation restitution fine pursuant to section 1202.45, stayed unless parole is revoked; and other items.

## B.  Resentencing Under Section 1172.75

Because Brown's sentence included the four, one-year enhancements based on prior prison terms, he was a candidate for resentencing under section 1172.75, and his attorney filed, in December 2023, a resentencing memorandum. The memorandum attached and summarized a mitigation report regarding Brown's difficult childhood, his adult criminal history, and his current incarceration. The memorandum invited the court, at resentencing, to consider postconviction factors under the authority of section 1172.75, subdivision (d)(3), and argued

4

Brown presented a reduced risk of future violence and did not merit a 30-year, four-month sentence. The memorandum also cited Assembly Bill No. 124, Senate Bill No. 81, and Senate Bill No. 620 as intervening, ameliorative laws that should apply and further reduce Brown's sentence. In this regard, the memorandum argued (1) the base sentence on the principal offense, count 7, for robbery, must be the middle term of three years, not the upper term, because no jury had found aggravating factors to support an upper term as would be required under changes to section 1170, subdivision (b); and (2) the court should dismiss the five-year prior serious felony enhancement given its new discretion under section 1385.

In March of 2024, the superior court held a resentencing hearing. The prosecutor stated he had "looked at the C-file" – that is, a collection of documents pertaining to an inmate. (*Lunsted v. Superior Court* (2024) 100 Cal.App.5th 138, 144, fn. 1.) The file "was unremarkable." Noting he "tried to find the facts of the case[,]" the prosecutor then stated: "I don't have a scanned file. I just found a probation report that said these were pass-a-note bank robberies. I think [Brown] had a prior bank robbery – I don't know the nature of that one – as well as a prior serious felony of another kind and some other convictions. So I think that his current sentence was well earned. The court can obviously strike the prison priors. But I think that matters of rehabilitation are better handled by an institution like the parole board." Defense counsel argued Brown, then age 59, had a greatly reduced risk of future violence and a "good recent history while in custody." Defense counsel also argued Brown's original sentence was out of step with today's norms and reiterated

objections to an upper term sentence and to retaining the five-year prior serious felony enhancement.

The superior court granted resentencing. Before imposing a new sentence, the court "guess[ed] the main problem that" it had "in terms of the defendant's prior record," was the collection of Brown's adjudications, described already, including those for robbery and attempted robbery, federal bank robbery, assault with a firearm, and the drug and weapon offenses. The court also expressed concern that the charges at issue in the resentencing involved robberies at four different banks. Following these remarks, the superior court imposed the same term of confinement as the 2015 court, only it omitted the four, one-year prior prison term enhancements.

In reselecting count 7 as the principal offense and resentencing Brown to the upper term on that count, the superior court concluded section 1172.75, subdivision (d)(4), permitted it to re-impose a previous upper term when, as here, the prior court had done so. "In addition," it found "aggravating factors far outweigh the mitigating factors" because of Brown's prior criminal history. The court mentioned as "aggravating," too, that Brown "got his son to present a robbery note" during one of the bank robberies. But the court immediately clarified its intentions: "But in terms of just for upper term, the court uses the defendant's prior convictions as an adult which sustained petitions superseding as [*sic*] numerous and increasing seriousness. [¶] The court bases the upper term on that aggravating factor as well as the aggravating factor that the defendant has served a prior prison term pursuant to Penal Code section 1170, . . . [subdivisions (b)(2) and (b)(3)]."

6

The superior court next addressed whether to reimpose a sentence under the Three Strikes law. The court, referencing Brown's resentencing memorandum, recognized and considered the difficulties Brown faced during his life. That is, the court noted Brown "had an unstable home life growing up. His mother was a drug addict. He had no food in his house. He bounced from home to home. His mother was physically and verbally abusive. His mother had been beaten herself by boyfriends. His father was an alcoholic and addicted to crack." Further, the court noted Brown "had to provide for his own food and money since the age of nine. He lived in empty houses since the age of twelve. He committed burglaries to make money to eat. He ran away from his placement at least five times. He sold drugs and committed robberies to survive when not in jail." And additionally, the court noted Brown "takes Zoloft for depression," has participated in self-improvement courses, has "had a job as a porter," is in his late 50s, and "walks with a cane."

After reciting these circumstances, the superior court concluded that despite "mitigating circumstances," Brown was not "outside the spirit" of the Three Strikes law given his history. Yet the superior court, in step with the original sentencing court, imposed only a one-strike sentence – that is, it only used one of Brown's prior felonies as a strike offense to double the principal and subordinate terms.

Finally, the court addressed Brown's request to dismiss the five-year prior serious felony enhancement. "The court note[d] that it [had] discretion to strike this per Penal Code section 1385 and/or strike the punishment" but "decline[d] to exercise its discretion based on [Brown's] prior record." The court found it was "not in the interest of justice" to do so. The abstract of

7

judgment also included the two, $9,000 restitution fines (see § 1202.4, subd. (b); § 1202.45), and other items, but the oral recitation of sentence included none of these.

Brown timely appealed.

## DISCUSSION

No one disputes Brown's entitlement to resentencing under section 1172.75. (See generally *People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838, 849 [recounting the resentencing statute's background and procedural mechanisms].) We proceed directly, then, to consider each of Brown's arguments for why the superior court's resentencing choices were in error.

## A. Retention of the Five-Year Enhancement

Brown first argues the superior court abused its discretion under sections 1172.75 and 1385 when retaining the five-year prior serious felony enhancement. The People urge us to find this argument entirely forfeited based on Brown's presentations to the trial court. But Brown invoked sections 1172.75 and 1385 in his resentencing memorandum. Brown cited section 1385 as the primary basis for dismissing the five-year enhancement and the superior court cited section 1385 in weighing and rejecting dismissal. Brown's lead argument here is that the superior court, despite citing section 1385, did not actually follow the correct statutory standards when considering the enhancement, and Brown argues cases decided *after* his resentencing make this clear. We will consider this argument on its merits.

Section 1385, subdivision (c)(1), provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Senate Bill No. 81 (Stats. 2021, ch. 721, § 1), effective

8

January 1, 2022, provides courts with new guidelines for exercising this discretion to dismiss enhancements. "In exercising [this] discretion . . . , the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [certain] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) The enumerated mitigating circumstances that Brown invokes as potentially relevant here include: "(D) The current offense is connected to mental illness," "(E) The current offense is connected to prior victimization or childhood trauma," and "(H) The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(D), (E), (H).)

According to Brown, the superior court failed to apply Senate Bill No. 81's guidelines, enshrined in section 1385, subdivision (c)(2), including its "great weight" imperatives. Brown is correct that the superior court's remarks addressing the five-year prior serious felony enhancement were brief. The court noted its "discretion to strike [the enhancement] per Penal Code section 1385," but "decline[d] to exercise its discretion based on [Brown's] prior record," finding it was "not in the interests of justice" to do so. The court did not state it was giving any mitigating factors "great weight," nor did it expressly address endangerment of public safety. But the brevity of these remarks, and the court's silence on Brown's stated issues of concern, do not show an abuse of discretion warranting reversal.

9

Under well-established rules of appellate review, we presume the court, on a silent record, applied sentencing laws correctly.  And these rules apply in the wake of Senate Bill No. 81's amendments to section 1385.  (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 [no error on section 1172.75 resentencing despite court not using " 'great weight' " language or analysis on the record]; *People v. Coleman* (2024) 98 Cal.App.5th 709, 724–725 [appellate court presumed the superior court applied Senate Bill No. 81's new standards even when that court did not mention section 1385]; *People v. Knowles* (2024) 105 Cal.App.5th 757, 764–765, 768–769 [no abuse of discretion in refusing to dismiss an enhancement under section 1385, subdivision (c), when the superior court "did not mention all of the mitigating evidence," for " '[u]nless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules' "]; see also *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all . . . relevant factors" and "the fact that the court focused its explanatory comments on [one factor] does not mean that it considered only that factor"]; accord *People v. Allen* (2019) 41 Cal.App.5th 312, 330.)

Here, Brown's section 1172.75 resentencing memorandum mentions both Senate Bill No. 81 and section 1385.  The superior court referenced section 1385 in discussing Brown's enhancement and gave no indication it was unaware of or misapplying section 1385, subdivision (c)'s test.  That test had been in effect for over two years at the time of Brown's March 2024 resentencing.  At points during the hearing, the court also demonstrated awareness of Brown's mitigating circumstances and the age of his prior crimes, as would be relevant to an analysis under revised

subdivision (c).  There is, furthermore, no contention that the court's brief statement of reasons related to the five-year enhancement was otherwise improper.

Brown acknowledges the silent record rule.  He argues, however, we cannot presume the superior court followed the law governing section 1385, subdivision (c), in this instance because that law was "new, unclear, and still being fleshed out, and [was] . . . subsequently explained in [two cases] *Walker*, and *Gonzalez*, months after the resentencing hearing."  Yet section 1385, at the time of resentencing, was not new and plainly specified the "great weight" test and the role of public safety. (Stats. 2021, ch. 721, § 1.)  Moreover, neither *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) nor *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*) altered a sentencing court's discretion in a way that would have benefited Brown.

*Walker rejected* a presumption favoring defendants, previously advanced by some Courts of Appeal, that enhancements be dismissed under section 1385, subdivision (c) whenever a mitigating factor is present.  Instead, *Walker* approved Court of Appeal decisions that viewed section 1385 as calling for " 'holistic balancing with special emphasis on the enumerated mitigating factors.' "  (*Walker*, *supra*, 16 Cal.5th at p. 1036, italics omitted.)  In turn, *Gonzalez* did not create a new rule of law, but rather corrected a superior court's misunderstanding regarding the term "endanger[ment] to public safety" in section 1385, subdivision (c)(2).  The statute defines the term as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others," (§ 1385, subd. (c)(2)), which does not contemplate a laser-like focus on dangerousness at the time of sentencing.  (*Gonzalez*,

11

*supra*, 103 Cal.App.5th at p. 228.)  The superior court in *Gonzalez* had expressly limited its consideration to the defendant's "current" dangerousness despite the call of the statute, a mistake not present here.  (*Id.* at pp. 228–230.)

Having determined that Brown cannot show the superior court applied an erroneous legal standard in considering his five-year enhancement, we turn to arguments Brown offers regarding how the superior court ultimately exercised its discretion regarding the enhancement.  Brown argues the court mistakenly relied on his federal conviction being one for "bank robbery," should not have weighed his juvenile adjudication in favor of retaining the enhancement, and failed to sufficiently weigh his asserted lack of future dangerousness and positive postconviction conduct.

With respect to these arguments, the People's forfeiture argument, mentioned at the outset of this section, has purchase.  Indeed, while Brown's resentencing memorandum plainly asked the superior court to consider striking the prior serious felony enhancement under sections 1172.75 and 1385, it did not alert the superior court to any assertedly invalid considerations and did not anticipate any of the court's remarks or choices in weighing the enhancement at the ensuing hearing.  (See *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1101.)  At that hearing, Brown's counsel made no objections to the superior court's stated reasons for retaining the five-year prior serious felony enhancement.

Brown thus alternatively asserts a violation of his constitutional right to effective counsel with respect to any forfeiture of these arguments he now raises for the first time on appeal.  An ineffective assistance of counsel claim requires

objectively unreasonable representation coupled with prejudice, meaning a reasonable probability that competent performance would have yielded a more favorable result.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.)  We decline to find ineffectiveness of the sort Brown asserts.

First, we address the lack of an objection to the superior court's supposedly mistaken reliance on Brown's federal conviction being one for "bank robbery" when that conviction may not have been considered a robbery under California law. (See *People v. Jones*, *supra*, 75 Cal.App.4th 616.)  Whatever the correct classification under California law, Brown's conviction was, as stated in the federal judgment, one for "Bank Robbery, in violation of Title 18 United States Code, Section 2113(a)." The original sentencing court agreed with Brown's understanding of the offense on the record.  Neither the original sentencing court nor the resentencing court considered the offense as a strike. And Brown does not show the resentencing court – in using the conviction's proper name – newly and improperly weighed its import in connection with any sentencing issues before that court.  We conclude trial counsel may have had tactical reasons to not object.  (See *People v. Aguirre* (2025) 18 Cal.5th 629, 679 [" 'When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was " ' "no conceivable tactical purpose" ' for counsel's act or omission" ' "].)  The nature of the conviction may have been already known to the court, the conviction might have had facts trial counsel did not want to disclose, and there were many other actual robbery convictions on defendants' record. Regardless, we see no reasonable likelihood of another result had trial counsel objected.

13

We next address the lack of an objection to the superior court's assertedly improper reliance on Brown's juvenile adjudication. Brown argues the court's reliance was inconsistent with its finding – which it made in evaluating the propriety of a Three Strikes Sentence – that Brown had an "unstable home life" and suffered abusive behavior as a child. To Brown, the court could not consider the juvenile adjudication against him, in weighing the five-year enhancement, if it was also to give great weight to the mitigating factor that his most recent crimes were "connected to prior victimization or childhood trauma." (See § 1385, subd. (c)(2)(E).) But the superior court, though mentioning the juvenile adjudication at some points during the sentencing hearing, did not call out the adjudication to support retaining the five-year enhancement. There would have been no reason for counsel, then, to object, especially given the numerous serious adult convictions in the "prior record" that the court did reference. In any event, considering the juvenile adjudication in the full context of Brown's prior record and his childhood experiences would have been proper, and the record does not show the superior court did otherwise. Nor does it appear the court would have been reasonably likely to have altered its analysis had this matter been expressly flagged for its attention.

Finally, we address the lack of an objection to the superior court's weighing of Brown's future dangerousness and post-conviction conduct. The record contained information regarding Brown's crimes at issue, his prior offenses, his overall life situation, and his performance in prison. The resentencing memorandum addressed these matters at length, and, over the course of the resentencing hearing, the court cited facts from that memorandum bearing on dangerousness. Counsel was not

14

ineffective for declining to further highlight, reargue, or further refine the argument regarding these facts, which were plainly on the court's mind. (*People v. Ledesma* (2006) 39 Cal.4th 641, 748 (*Ledesma*) ["The mere circumstance that a different, or better, argument could have been made is not a sufficient basis for finding deficient performance by defense counsel"].) Nor is it reasonably probable the superior court would have altered its analysis had counsel done so. As to postconviction factors that might have been applicable to weighing the enhancement (see § 1172.75, subd. (d)(3)), the resentencing memorandum called the court's attention to the relevant subdivision, and the superior court's resentencing remarks demonstrate it was aware of the postconviction factors that might benefit Brown. Moreover, subdivision (d)(3) only states that a court "may" consider postconviction factors; consideration is not mandatory. (§ 1172.75, subd. (d)(3).) Counsel's reliance on the resentencing memorandum, especially given the court's obvious familiarity with it, was not deficient performance. (*Ledesma*, at p. 748.) And again, counsel's reliance on the resentencing memorandum did not prejudice Brown.

Even were we to address the merits of Brown's various arguments challenging the way the superior exercised its discretion regarding the five-year enhancement, our task would not be simply to state agreement or disagreement with the superior court's decision to retain that enhancement. "A ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' . . . . [A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that

15

no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Given Brown's criminal history, and given the nature of the offenses charged in the current case, we cannot say it was irrational or arbitrary for the superior court, evaluating Brown's situation holistically and in furtherance of justice, to view it as appropriate to retain the five-year enhancement, even if great weight were to be given to qualifying mitigating factors. Even after the changes to section 1385, subdivision (c), the "ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement." (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098; *People v. Knowles*, *supra*, 105 Cal.App.5th at p. 770.)

## B.    The Three Strikes Sentence

Brown next argues the superior court abused its discretion in sentencing him under the Three Strikes law instead of striking his prior strike conviction. He asserts the superior court had to apply, but did not apply, the same "great weight" test under section 1385, subdivision (c)(2), that we just discussed in connection with the five-year prior serious felony enhancement.

This argument falters for two reasons.

First, Brown forfeited this claim. Although Brown, in his resentencing memorandum, requested a sentence outside the Three Strikes law, he did so solely based on the incorrect assertion that the original sentencing court had found no strikes at all. When the resentencing court, at the hearing, undertook the ordinary analysis regarding retaining or dismissing strikes – under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and section 1385, *subdivision (a)* – Brown did not object. He, in particular, did not argue the superior court should have instead applied the "great weight" rubric of section 1385, subdivision

16

(c)(2). "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.)

Second, forfeiture aside, we reject Brown's alternative contention that his counsel rendered ineffective assistance by failing to raise section 1385, subdivision (c)'s applicability to Three Strikes law sentencing. Failure to raise a meritless argument is not ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377.) And Brown's argument lacks merit. The Courts of Appeal have unanimously concluded "that section 1385, subdivision (c) applies by its terms to a sentence 'enhancement,' but not to a sentence derived from the alternative sentencing scheme of the Three Strikes law. (§ 1385, subd. (c); *People v. Dain* (2024) 99 Cal.App.5th 399, 410–422 (*Dain*), review granted May 29, 2024, S283924 ['Courts of Appeal have uniformly concluded that section 1385(c) does not apply to the decision whether to dismiss a prior strike conviction because the Three Strikes law is an alternative sentencing scheme, not an enhancement']; *People v. Olay* (2023) 98 Cal.App.5th 60, 66–67 (*Olay*) [if the Legislature had wanted § 1385, subd. (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so]; *People v. Burke* (2023) 89 Cal.App.5th 237, 244 (*Burke*) ['The plain language of subdivision (c) of section 1385 applies only to an "enhancement," and the Three Strikes law is not an enhancement']; see *Dain, supra*, 99 Cal.App.5th at pp. 410–422, review granted [agreeing with *Burke* and *Olay* and recognizing that § 1385, subd. (c)(2)(H), which provides that a prior strike conviction over five years old is a mitigating circumstance, would directly conflict with the Three Strikes

17

law].)" (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 9–10, review denied Feb. 11, 2025, S288676.)  We adhere to this view.

In his reply brief, Brown argues the superior court also abused its discretion in declining to dismiss his lone strike, even under the traditional rubric of *People v. Superior Court* (*Romero*) and section 1385, subdivision (a).  " 'We need not, and typically do not, address arguments raised for the first time in a reply brief.' " (*People v. Dunn* (2025) 18 Cal.5th 129, 183, fn. 13; accord *People v. Adir Internat., LLC* (2025) 114 Cal.App.5th 275, 298 ["We generally do not consider arguments made for the first time in a reply brief"].)  Even so, we find no abuse of discretion.  The superior court weighed factors for and against retaining the lone strike and we cannot say it was irrational for that court to locate Brown, with his persistent robbery convictions, within the spirit of the Three Strikes law.  (See *People v. Carmony*, *supra*, 33 Cal.4th at pp. 377–379.)

## C.    Reimposition of the Upper Term

Pivoting from section 1385, Brown next argues the superior court's reimposition of the five-year upper term, rather than the middle term, on count 7 – the principal robbery offense in both sentencings – violated section 1170, subdivision (b)(2).  Brown contends, as he did in his resentencing memorandum, that revisions to this subdivision now require a defendant to admit, or a competent factfinder to find beyond a reasonable doubt, any aggravating facts a sentencing court cites in selecting an upper term, making the middle term the otherwise appropriate punishment.  When the superior court here selected the upper term, it cited its distinct authority under section 1172.75, subdivision (d)(4) to reimpose that term.  It additionally justified the upper term by citing aggravating factors, including the

18

increasing seriousness of Brown's crimes – a circumstance that had not been found at a trial beyond a reasonable doubt.

In current prosecutions, where section 1170, subdivision (b)(2)'s new rule undisputedly governs without regard to any provision of section 1172.75, increasing seriousness of crimes is an aggravating fact that increases punishment, and a sentencing court cannot simply intuit it. (*People v. Wiley* (2025) 17 Cal.5th 1069, 1078, 1082.) The issue for us, however, is whether the superior court erred in reimposing, at this statutorily-created resentencing procedure, the upper term – a term the original sentencing court properly imposed under version of section 1170 effective then. (See *People v. Lynch* (2024) 16 Cal.5th 730, 748 [discussing both versions of section 1170].) We see no error.

The Legislature enacted section 1172.75's resentencing process and made the relevant revisions to section 1170, subdivision (b), in the same year, 2021. (*People v. Mathis* (2025) 111 Cal.App.5th 359, 371 (*Mathis*).) Section 1170, subdivision (b)(2), now states a court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." This reflected a change from the previous practice, applicable when Brown was first sentenced, of setting the statutory maximum punishment at the upper term but allowing trial courts discretion to select among the upper, middle, or lower terms. (*People v. Lynch*, *supra*, 16 Cal.5th at pp. 747–748.) Both versions of section 1170, we emphasize, complied with *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), and

19

its requirement, based on the Sixth Amendment, of beyond-a-reasonable-doubt factfinding of any fact that would expose a defendant to a punishment beyond the maximum otherwise authorized by statute. (*Lynch*, at pp. 747–748.)

Meanwhile, section 1172.75, subdivision (d)(2), instructs a resentencing court to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." But subdivision (d)(4), which the resentencing court invoked, addresses upper terms specifically. (§ 1172.75, subd. (d)(4).) It uses language hearkening to the contemporaneous changes in section 1170. That is, the subdivision provides: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(4).)

The Courts of Appeal have addressed the interplay between section 1170, subdivision (b)(2), and section 1172.75, subdivisions (b)(2) and (b)(4). *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466–467, holds that section 1172.75, subdivision (d)(4), carves out an exception to section 1170, subdivision (b)(2), and allows a resentencing court to reimpose an upper term without additional factfinding beyond a reasonable doubt. *Brannon-Thompson* additionally views section 1172.75, subdivision (d)(4), as an exception to the more general rule of section 1172.75, subdivision (d)(2) that new, ameliorative

sentencing rules should apply.  (*Brannon-Thompson*, at pp. 466-467.)  *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 328–330, acknowledged the reasonableness of *Brannon-Thompson*'s textual analysis but adopted a different interpretation.  It viewed section 1172.75, subdivision (d)(4) as "simply restrict[ing] the scope of defendants eligible to receive the upper term at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term."  (*Gonzalez,* at p. 329, italics omitted.)  *Gonzalez* preferred this interpretation because it was concerned that allowing reimposition of upper terms without meeting the new factfinding requirements could run afoul of *Apprendi*.  (*Gonzalez*, at pp. 329–330.)

Appellate decisions after *People v. Gonzalez* have rejected its reasoning, especially with respect to defendants, like Brown, who were originally sentenced to upper terms in compliance with *Apprendi*.  (*Mathis, supra,* 111 Cal.App.5th at pp. 373–374 [an original upper-term sentencing complied with *Apprendi*, and the Legislature, in enacting the section 1172.75 procedure, did not have to give defendants relief from that upper term, and the language of subdivision (d)(4) made clear it did not do so]; cf. *People v. Dozier* (2025) 116 Cal.App.5th 700, 715 [holding that even a defendant sentenced to an upper term before California amended section 1170 to comply with *Apprendi* could be resentenced to that term under section 1172.75 without additional factfinding].)

Our Supreme Court will consider these matters in *People v. Eaton*, review granted May 14, 2025, S289903.  (See *Mathis*, *supra*, 111 Cal.App.5th at p. 373, fn. 6.)  Meanwhile, we follow the many appellate courts disagreeing with *People v. Gonzalez* for the reasons stated by those courts.  We thus agree the Legislature intended subdivision (d)(4) to limit the otherwise broad, ameliorative scope of a section 1172.75 resentencing, and that the Legislature could so limit the scope of relief for defendants with already-imposed, proper upper-term sentences without generating new constitutional concerns under *Apprendi*.  (*Mathis*, at p. 374, citing *People v. Padilla* (2022) 13 Cal.5th 152, 162 ["The Legislature may write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all"].)  Section 1172.75, subdivision (d)(4), by starting with the proviso that "[u]nless the court originally imposed the upper term," signals that there are two rules for imposing an upper term on resentencing – one rule for those with prior upper term sentences and another rule, involving heightened factfinding, for those without.  Subdivision (d)(4) plainly permits a defendant with a prior middle term to receive, upon resentencing and proper factfinding, an upper term.  *Gonzalez*'s proffered interpretation of subdivision (d)(4) as "simply restrict[ing] the scope of defendants eligible to receive the upper term at resentencing to those who previously received the upper term" (*People v. Gonzalez, supra*, 107 Cal.App.5th at p. 329, italics omitted) thus seems counter textual.

The superior court's imposition of the upper term on count 7 did not violate Brown's constitutional rights. Nor, for reasons discussed in connection with the five-year prior serious felony enhancement, was it an abuse of discretion given Brown's criminal past and the nature of the charged crimes.

Brown's opening brief argues the superior court should actually have imposed the *lower* term on count 7 under section 1170, subdivision (b)(6), which instructs that notwithstanding the now-default middle term, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if" defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).) Counsel below, however, argued for a reduction to the *middle* term, not the lower term. Brown has forfeited a lower-term argument. Further, we decline to find ineffective assistance of counsel on the appellate record before us. Counsel may have had a tactical purpose in advocating, as he did, for the middle term, which could have been viewed as a more realistic approach given the circumstances. And the ultimate reimposition of the upper term, along with the distance between Brown's childhood at the instant offenses, suggests no reasonable probability of a low-term sentence had counsel sought one. (See *People v. Aguirre, supra,* 18 Cal.5th at p. 679.)

23

## D. Mandatory Fines and Assessments Mentioned Only in Written Record of Sentence

Brown also challenges several of the fines and assessments imposed at resentencing. The abstract of judgment notes these items:

(1) a $9,000 restitution fine pursuant to section 1202.4, subdivision (b);

(2) a matching $9,000 parole restitution fine pursuant to section 1202.45, which would be stayed unless parole is revoked;

(3) victim restitution to Chase Bank of $9.009.66, pursuant to section 1202.4, subdivision (f);

(4) a $280 court operations assessment ($40 per count) pursuant to section 1465.8, subdivision (a)(1);

(5) a $210 criminal conviction assessment ($30 per count) pursuant to Government Code section 70373; and

(6) a $39 crime prevention fine pursuant to section 1202.5. The transcript of the resentencing hearing, however, reflects imposition only of the $9,009.66 in victim restitution.

Brown contends that any fines or assessments not imposed orally at resentencing – all but the victim restitution to Chase – should be stricken. Brown alternatively seeks remand for an ability-to-pay hearing for any of these mandatory fines or assessments that could have been orally imposed but were not. The People respond that a superior court's failure to orally impose mandatory fines or assessments results in an unauthorized sentence that we may correct on appeal. (See *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1153–1157.) And the People further ask us to impose the amounts stated in the abstract of judgment without regard to Brown's ability to pay, asserting "remand is not necessary since the trial court

24

necessarily found [he] had the ability to pay the mandatory assessments and fines when it determined that he had the ability to pay $9,009.66 in victim restitution."

Although we agree with the People that, under *People v. Talibdeen,* an appellate court can order imposition of an undisputed mandatory fee when appropriate, we do not agree the superior court sufficiently addressed ability to pay. After Brown protested he could not afford victim restitution, the court replied: "Sir, you were originally ordered to pay $9,009.66, and that's to Chase Bank. The court is going to reimpose that. But, sir, you can only pay what you have. And if you don't have the ability to pay, then you're not gonna be able to pay it. But I am going to reimpose that." The court, then, sidestepped the issue of ability to pay, treating it as irrelevant to the issue of direct victim restitution. (See *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 859 [ability-to-pay principles "have not been extended to a victim restitution payment under section 1202.4, subdivision (f)"]; accord *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338; *People v. Evans* (2019) 39 Cal.App.5th 771, 777.) As the court did not orally impose any additional fines or fees, Brown had no meaningful opportunity to raise his ability to pay with respect to them.

Recently, our Supreme Court has explained how courts must address ability to pay when considering most of the mandatory fines and assessments at issue in this case. (*People v. Kopp* (2025) 19 Cal.5th 1 (*Kopp*).) By statute, restitution fines and probation restitution fines under section 1202.4, subdivision (b), and section 1202.45 that exceed the $300 minimum shall account for ability to pay. (*Kopp,* at p. 30.) And because of equal protection principles, a court must consider ability to pay before

25

imposing ancillary assessments under section 1465.8, subdivision (a)(1) and Government Code section 70373. (*Kopp,* at p. 30.) As to the remaining fine in Brown's case, under section 1202.5, the parties do not dispute the fine must be set with ability to pay in mind, but is mandatory if affordable. (§ 1202.5, subd. (a).)

Given this, we will order a limited remand for the superior court to consider the mandatory fines and assessments omitted from its oral sentencing pronouncements in connection with defendant's ability to pay. (See, e.g., *People v. Montes* (2021) 59 Cal.App.5th 1107, 1124; *People v. Santos* (2019) 38 Cal.App.5th 923, 934.)

Before concluding, we flag one other matter *Kopp* discussed. Regarding restitution fines, the Supreme Court noted "section 1465.9 has [recently] been amended to provide that, '[u]pon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated.' (Pen. Code, § 1465.9, subd. (d); Stats. 2024, ch. 805, § 1.)" (*Kopp*, *supra*, 19 Cal.5th at p. 17.) At least one Court of Appeal has held a court conducting a section 1172.75 resentencing cannot reimpose a restitution fine that is more than 10 years old and has held, instead, the fine should be stricken. (*People v. Salstrom* (2025) 117 Cal.App.5th 596, 601.) As no restitution fine has been properly imposed, we are in no position to consider striking it, and the superior court can consider these developments on remand.

**DISPOSITION**

We order a limited remand for the superior court to consider the mandatory fines and assessments omitted from its oral sentencing pronouncements in connection with defendant's ability to pay. Those omitted fines and assessments include: the restitution fine under section 1202.4, subdivision (b), the parole restitution fine under section 1202.45, the court operations assessment under section 1465.8, subdivision (a)(1), the criminal conviction assessment under Government Code section 70373, and the fine under section 1202.5. We otherwise affirm.

SCHERB, J.

We concur:

STRATTON, P. J.

WILEY, J.

27